565 A.2d 1184

George **POPSKYJ**, Appellant,

v.

**KEYSTONE INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued Dec. 20, 1988.

Filed Oct. 30, 1989.

430

Henry J. Lotto, Philadelphia, for appellant.

Dennis Veneziale, Philadelphia, for appellee.

Before CIRILLO, President Judge, and BROSKY, McEWEN, DEL SOLE, MONTEMURO, BECK, TAMILIA, POPOVICH and JOHNSON, JJ.

BROSKY, Judge.

This is an appeal from the order of July 21, 1987, docketed August 11, 1987, which denied appellant's petition to modify or vacate an arbitration award.

On May 24, 1985, appellant, George Popskyj was struck, while a pedestrian, by an automobile driven by Steven R. Alexy. Alexy was insured by Prudential Property and Casualty Insurance Company ("Prudential"). In April of 1987, Prudential tendered the full amount of Alexy's policy in settlement of appellant's claim. In return, appellant signed a release in favor of Alexy.

Appellant then demanded from his own insurer, Keystone Insurance Company, appellee herein, the payment of underinsured motorist benefits. Appellee denied coverage, based upon the issue of liability, as well as the amount of damages.

Pursuant to the insurance contract, the parties submitted their dispute to statutory arbitration. At arbitration, appel-

lees raised defenses pertaining to liability and damages, but also argued that appellant had settled with Alexy without appellee's prior consent, thereby extinguishing appellee's right of subrogation in violation of various provisions in the insurance contract. The arbitrators held in appellee's favor.

Appellant then filed a petition to vacate or modify the award of the arbitrators. The Court of Common Pleas of Philadelphia County denied appellant's petition. This appeal followed.[1]

Appellant raises the following issues, in his original brief, for our determination: (1) whether the arbitrators' decision misinterpreted the insurance contract, and was thus an error of law; (2) whether appellee waived the contract's consent to settle clause by its conduct; (3) whether appellee improperly introduced new evidence on appeal to the trial court; (4) whether appellee must demonstrate prejudice to itself in order to deny coverage; (5) whether the consent to settle clause was so vague and ambiguous as to be unenforceable; (6) whether the terms of the contract were contradictory so as to create a "catch–22" situation whereby an insured could not recover; and (7) whether appellee's conduct in dealing with appellant amounted to bad faith.

Appellant also raises, by way of his supplemental brief to the en banc court, whether this Court may review the

---

**1.** We note that there would appear to be a procedural irregularity in the taking of this appeal.

The trial court denied appellant's petition to vacate or modify by order of July 21, 1987. Appellant entered final judgment on the order, and appealed from that judgment.

In *Dunlap v. State Farm Ins. Co.*, 377 Pa.Super. 165, 546 A.2d 1209 (1988), a panel of this Court held that an order denying a petition to vacate an arbitration award is not an appealable order. *Id.*, at p. 1210. The court, where no further application to modify or correct the award is pending, has the obligation to enter an order confirming the award; it is the order confirming the award that is to be reduced to final judgment for the taking of an appeal. *Id.*, at p. 1211.

In the matter *sub judice*, the trial court did not confirm the arbitration award. However, as *Dunlap* was not filed until August 23, 1988, more than one year after the current appeal was taken, we shall not remand for the performance of this ministerial act, but shall overlook this procedural irregularity, as this appeal was taken from a final judgment.

arbitrators' award for an error of law.[2]

Upon review of the record, and the arguments of counsel, we find no error, and now affirm.

Our discussion must begin with Issue 1 as raised in appellant's supplemental brief, as its resolution determines whether we may reach the other issues raised, which all concern the legal correctness of the result reached by the arbitrators: may an arbitration award such as this be reviewed for an error of law?

In support of his position, i.e., that we may review for an error of law, appellant cites the following provision, in relevant part, from the Pennsylvania Uniform Arbitration Act of 1980,[3] 42 Pa.C.S. § 7301, et seq:

§ 7302.   Scope of subchapter
    *      *      *      *      *      *

(d) Special application.—

(1) *Paragraph (2) shall be applicable where:*

(i) The Commonwealth government submits a controversy to arbitration.

(ii) A political subdivision submits a controversy with an employee or a representative of employees to arbitration.

(iii) *Any person has been required by law to submit or to agree to submit a controversy to arbitration pursuant to this subchapter.*

(2) *Where this paragraph is applicable* a court in reviewing an arbitration award pursuant to this subchapter shall, *notwithstanding any other provision of this subchapter, modify or correct the award where the award is contrary to law and is such that had it been a*

---

**2.**  In his supplemental brief, appellant also repeats Issues 1 and 2 from his original brief, in his supplemental Statement of Questions Involved.

**3.**  The parties do not dispute that the insurance policy, as of the date of this accident, provided for statutory, and not common law, arbitration of disputed underinsured motorist claims. They also do not dispute that the 1980 Act had taken effect as of the relevant date.  It is the interpretation of the 1980 Act, as it applies *sub judice,* that forms the basis of the parties' dispute.

*verdict of a jury the court would have entered a differ-*
*ent judgment or a judgment notwithstanding the ver-*
*dict.*

(Emphasis supplied).

While the boundaries of appellant's arguments on this point are not well delineated, but rather, are overlapping, he appears to be making three arguments as to why the broad scope of review under § 7302(d)(2) should apply here: (1) 42 Pa.C.S. §§ 7303 and 7304 provide that agreements to arbitrate are valid, enforceable, and irrevocable, and thus the insurance contract's arbitration provision brings the parties within § 7302(d)(1)(iii) as persons "required by law to submit ... a controversy to arbitration"; (2) the repealed No–Fault Act, which, pursuant to 40 P.S. § 2000 and the regulations promulgated thereunder, required the carriage of uninsured motorist coverage, and arbitration of uninsured coverage disputes, has been replaced by the Motor Vehicle Financial Responsibility Law, which requires both uninsured and underinsured coverage, and thus the applicable regulations should be construed as requiring arbitration of underinsured claims as well, which would make these parties persons "required by law ... to agree to submit a controversy to arbitration" under § 7302(d)(1)(iii); and (3) lastly, case law to date involving such coverage disputes has routinely applied the broad scope of judicial review.

Appellee, by contrast, takes the position that this matter does not fall within any of the special circumstances where the § 7302(d)(2) broad scope of review is applicable. If appellee is correct, the "other provision(s)" referred to in § 7302(d)(2) would define our scope of review, and control whether this Court has the authority to vacate, modify, or correct the award in any fashion. The "other provision(s)" are found at 42 Pa.C.S. §§ 7314 and 7315, which, in relevant part, narrowly circumscribe the circumstances in which we may alter an award:

§ 7314. Vacating award by court

(a) General rule.—

(1) On application of a party, the court shall vacate an award where:

(i) the court would vacate the award under section 7314 (relating to common law arbitration) if this subchapter were not applicable;

(ii) there was evident partiality by an arbitrator appointed as a neutral or corruption or misconduct in any of the arbitrators prejudicing the rights of any party;

(iii) the arbitrators exceeded their powers;

(iv) the arbitrators refused to postpone the hearing upon good cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section 7307 (relating to hearing before arbitrators), as to prejudice substantially the rights of a party; or

(v) there was no agreement to arbitrate and the issue of the existence of an agreement to arbitrate was not adversely determined in proceedings to compel or stay arbitration) and the applicant-party raised the issue of the existence of an agreement to arbitrate at the hearing.

(2) *The fact that the relief awarded by the arbitrators was such that it could not or would not be granted by a court of law or equity is not a ground for vacating or refusing to confirm the award.*

\*　　\*　　\*　　\*　　\*　　\*

§ 7315. Modification or correction of award by court

(a) General rule.—On application to the court made within 30 days after delivery of a copy of the award to the applicant, the court shall modify or correct the award where:

(1) there was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award;

(2) the arbitrators awarded upon a matter not submitted to them and the award may be corrected *without affecting the merits of the decision upon the issues submitted;* or

(3) the award is deficient in a matter of form, *not affecting the merits of the controversy.*

\* \* \* \* \* \*

(Emphasis supplied.)

As none of the above circumstances are applicable, and appellant has proffered no argument to the contrary, clearly we would not have the authority to disturb this award for an error of law if appellee is correct in its position.

Upon review of the record and the arguments of counsel, we conclude that the broad scope of review under § 7302(d)(2) is not appropriate under the facts presented, and, as the parties are in agreement that none of the circumstances contemplated in §§ 7314 and 7315 are involved, we hold that this Court does not have the power to alter the arbitrators' award. Accordingly, we affirm.

■ Appellant's first argument is that the parties' contract, which provides for arbitration of disputed underinsured motorist claims, brings §§ 7303 and 7304 into play. Those sections provide as follows, in relevant part:

§ 7303.  Validity of agreement to arbitrate

A written agreement to subject any existing controversy to arbitration or *a provision in a written agreement to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable,* save upon such grounds as exist at law or in equity relating to the validity, enforceability or revocation of any contract.

§ 7304.  Court proceedings to compel or stay arbitration

(a) Compelling arbitration.—On application to a court to compel arbitration made by a party *showing an agreement described in section 7303 (relating to validity of agreement to arbitrate)* and a showing that an opposing party refused to arbitrate, *the court shall order the parties to proceed with arbitration.* If the opposing party denies the existence of an agreement to arbitrate, the court shall proceed summarily to determine the issue so raised and shall order the parties to proceed with

arbitration if it finds for the moving party. Otherwise, the application shall be denied.

\* \* \* \* \* \*

(Emphasis supplied.)

As § 7303 makes such provisions as the one *sub judice* "valid, enforceable, and irrevocable", with § 7304 providing the mechanism for court enforcement, appellant reasons that the parties are persons "required by law ... to submit a controversy to arbitration" for purposes of § 7302(d)(1)(iii), thereby entitling him to a review of this award under the broad "judgment n.o.v." standard.

One need only consult the language of § 7302(a) to see the flaw in appellant's argument:

§ 7302. Scope of subchapter

(a) General rule.—An agreement to arbitrate a controversy on a nonjudicial basis *shall be conclusively presumed to be an agreement to arbitrate pursuant to Subchapter B (relating to common law arbitration) unless the agreement to arbitrate is in writing and expressly provides for arbitration pursuant to this subchapter or any other similar statute*, in which case the arbitration shall be governed by this subchapter.

\* \* \* \* \* \*

(Emphasis supplied).

Taking appellant's argument as true, it would be impossible for contracting parties to have a written agreement to arbitrate, and not fall within the exceptional circumstances of § 7302(d)(1)(iii), entitling the loser at arbitration to review of the award for errors of law. As the above-emphasized language of § 7302(a) makes clear, however, it is entirely possible for parties to agree in writing to arbitrate, and in the absence of an express provision that statutory arbitration is involved, it shall be "conclusively presumed" that the parties intend for the rules of common law arbitration to apply. The scope of review applicable to a common law arbitration award is even narrower than that encompassed in §§ 7314 and 7315:

## SUBCHAPTER B

## COMMON LAW ARBITRATION

\* \* \* \* \* \*

### § 7341. Common Law Arbitration

The award of an arbitrator in a nonjudicial arbitration which is not subject to Subchapter A (relating to statutory arbitration) or a similar statute regulating nonjudicial arbitration proceedings is binding *and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award.*

(Emphasis supplied).

As such, appellant's argument that a written agreement to arbitrate automatically invokes the § 7302(d)(2) broad scope of review, must fail.

■ Appellant's second argument concerns the now-repealed No–Fault Act, 40 P.S. § 1009.101, et seq., and the regulations promulgated pursuant to that Act. At 31 Pa. Code § 63.1, the Insurance Commission, in accordance with the authority given it by 40 P.S. § 2000, made the inclusion of uninsured motorist coverage in liability insurance policies mandatory, except where such coverage was "rejected in writing by the insured." Furthermore, at 31 Pa.Code § 63.2, a sample form setting forth the minimum required coverage to be offered, included the following arbitration provision for the resolution of coverage disputes:

8. Arbitration. If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this endorsement, then, upon written demand of either, the matter or matters upon which such person and the company do not agree *shall be settled by arbitration in accordance with the rules of the American Arbitration Association,* and judgment

upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such person and the company each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this endorsement.

(Emphasis supplied.)

As the replacement act, the Motor Vehicle Financial Responsibility Act, 75 Pa.C.S. § 1701, et. seq., now makes both uninsured *and* underinsured coverage in liability policies mandatory, see 75 Pa.C.S. § 1731, appellant argues by analogy that arbitration as provided in the above regulation is now mandatory in both uninsured and underinsured coverage disputes, making such disputes as the current one disputes where the parties are persons "required by law ... to agree to submit a controversy to arbitration" under § 7302(d)(1)(iii).

We shall not, and need not, resolve whether appellant is correct that arbitration is now required, under 31 Pa.Code § 63.2, of underinsured coverage disputes, for we find that the regulation in question demonstrates the flaw in appellant's argument. As the above-emphasized language shows, mandatory arbitration must be available to the parties, but "in accordance with the rules of the American Arbitration Association". The rules of the AAA provide for common law arbitration of disputes. See *Great American Ins. Co. v. American Arbitration Assoc.*, 436 Pa. 370, 260 A.2d 769, 770 (1970); *Wingate Construction Co. v. Schweizer Dipple, Inc.*, 419 Pa. 74, 213 A.2d 275, 277 (1965).

Hence, appellant is once arguing that the very existence of an arbitration provision that is legally enforceable, automatically entitles him to review of this award for errors of law under the § 7302(d)(1)(iii), where the very body of law providing for arbitration makes it patently obvious that a liability carrier is only obligated to submit to common law arbitration. We have already established that awards pursuant to common law arbitration are not subject to the broad scope of judicial review.

Appellant's argument, again, must fail.

■ Finally, appellant cites several cases involving unin-sured/underinsured coverage disputes, in which it was held that the loser at arbitration was entitled to receive the broad "judgment n.o.v." scope of review of the award, and that the award could be corrected for errors of law.

A discussion of these cases would be premature prior to a comparison/contrast of the current Pennsylvania Uniform Arbitration Act, 42 Pa.C.S. § 7301, et seq., and its now repealed predecessor, the Uniform Arbitration Act of 1927, 5 P.S. §. 161, et seq.

The Uniform Arbitration Act of 1927 provided the follow-ing grounds for court modification or correction of an award in arbitration:

§ 171. Modifying or correcting award, grounds

In either of the following cases the court shall make an order modifying or correcting the award upon the applica-tion of any part to the arbitration:

(a) Where there was an evident material miscalculation of figures, or an evident material mistake in the descrip-tion of any person, thing or property referred to in the award.

(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matters submitted.

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

(d) *Where the award is against the law, and is such that had it been a verdict of the jury the court would have entered different or other judgment notwithstand-ing the verdict.*

The court may modify and correct the award or resubmit the matter to the arbitrators.

(Emphasis supplied.)

Clearly, the broad "judgment n.o.v." standard of review was not limited under the 1927 Act to any particular class of litigants or to any special circumstances pertaining to the context of the parties' statutory arbitration agreement.

This, of course, is in direct contrast to the current act, passed into law in 1980, which now limits the availability of review of awards for errors of law. See 42 Pa.C.S. § 7302(d)(1). However, the 1980 Act was passed with an accompanying historical note which sets forth the following, in relevant part:

Historical Note

Application:

Section 501(b) of Act 1980, Oct. 5, P.L. 693, No. 142. provides as follows:

The provisions of 42 Pa.C.S. § 7302(d)(2) (relating to special application) shall be applicable to any nonjudicial arbitration pursuant to:

(1) An agreement made prior to the effective date of this act which expressly provides that it shall be interpreted pursuant to the law of this Commonwealth and which expressly provides for statutory arbitration.

(2) An agreement heretofore or hereafter made which expressly provides for arbitration pursuant to the former provisions of the Act of April 25, 1927 (P.L. 381, No. 248), relating to statutory arbitration.

In essence, the legislature recognized the inequity and chaos likely to result by imposing the 1980 Act's limitations as to the review of awards, upon parties who had expressly agreed to the rules, and broad scope of review, provided in the 1927 Act. To avoid this result, the legislature included the above historical note, which specifies two instances which, without more, shall be viewed as falling within the parameters of § 7302(d)(1)(iii), as involving parties legally bound to arbitrate subject to broad judicial review: (1) agreements to arbitrate made prior to December 4, 1980, the effective date of the 1980 Act, expressly providing for arbitration pursuant to the laws of the Commonwealth; and (2) agreements to arbitrate, made either before or after 1980, expressly providing for arbitration under the 1927 Act.

With this background, we turn to the cases cited by appellant, and find that we needn't embark upon an exhaustive analysis of the facts of each case. The cases cited clearly fall, with few exceptions,[4] within one of three categories:

1) cases in which the accident precipitating the cause of action occurred pre–1980, and the parties' agreement thereby either expressly or implicitly provided for arbitration under the 1927 Act: see *Littlejohn v. Keystone Ins.*

**4.** Appellant cites three cases which do not appear to fit into the enumerated categories above. We shall discuss them in chronological order.

The first, *Haegele v. Pennsylvania General Ins. Co.,* 330 Pa.Super. 481, 479 A.2d 1005 (1984), involved a 1978 accident upon which the parties arbitrated in 1981. Despite the fact that the insurance agreement's arbitration clause called for arbitration pursuant to the 1927 Act, the parties apparently orally agreed at arbitration to follow the 1980 Act. *Haegele,* supra, at p. 1006, n. 3. This would appear to contravene both § 7303, which makes the terms written agreements to arbitrate irrevocable and enforceable, as well as the historical note to § 7302, which makes it clear that agreements specifying the 1927 Act shall be arbitrated in accordance with the 1927 Act.

However, without giving a rationale, our Court held that the broad scope of review was applicable. Hence, we affirm the result reached in *Haegele,* as the parties' agreement specified that the 1927 Act would apply, but disavow any suggestion in footnote three that the parties were free to orally alter the terms of their written agreement.

The second case, *Houston v. Nat'l Mut. Ins. Co.,* 358 Pa.Super. 618, 518 A.2d 311 (1986), involved a 1985 accident, with a policy calling for arbitration pursuant to the "Pennsylvania Uniform Arbitration Act, 42 Pa.C.S.A. § 7301 et seq." Our Court refused to apply the broad standard of review. Appellant argues that the result in *Houston* derives from the appellant therein failing to argue §§ 7303 and 7304 to our Court.

However, as the terms of the *Houston* policy expressly called for arbitration pursuant to the 1980 Act, and as we have already declined to follow appellant's interpretation of §§ 7303 and 7304 vis-a-vis § 7302(d)(1)(iii), we find that *Houston* was correctly decided.

Finally, in *Winters v. Erie Ins. Co.* 367 Pa.Super. 253, 532 A.2d 885 (1987), which involved a 1982 accident, arbitrated in 1986, our Court held that the award could be reviewed for errors of law, as the appellee-insurance company had waived any objection to broad review by failing to contest it below.

As the scope of review issue was resolved on the basis of waiver, and as the case does not include the language of the arbitration clause, we decline to either disturb the *Winters* holding, or to discuss its approach to this issue further.

*Co.*, 353 Pa.Super. 63, 509 A.2d 334 (1986);[5] *Boyle v. State Farm Mut. Ins. Co.*, 310 Pa.Super. 10, 456 A.2d 156 (1983); *Obdyke v. Harleysville Mut. Ins. Co.*, 299 Pa.Super. 298, 445 A.2d 763 (1982);

2) cases in which the insurance agreement was made prior to December 4, 1980, and contained language providing that the law of the Commonwealth would apply, in accordance with part (1) of the historical note: see *Bromley v. Erie Ins. Group*, 322 Pa.Super. 542, 469 A.2d 1124 (1983);[6] and

3) cases arising either before or after December 4, 1980, in which the insurance agreement specifically provided for arbitration under the 1927 Act, in accordance with part (2) of the historical note: see *Geisler v. Motorists Mut. Ins. Co.*, 382 Pa.Super. 622, 556 A.2d 391 (1989); *Selected Risks Ins. Co. v. Thompson*, 363 Pa.Super. 34, 525 A.2d 411 (1987), aff'd in part, rev'd in part on other grounds 520 Pa. 130, 552 A.2d 1382 (1989); *Ragin v. Royal Globe Ins. Co.*, 315 Pa.Super. 179, 461 A.2d 856 (1983).[7]

5. In *Littlejohn*, the accident occurred in 1977, while the arbitration did not occur until 1982. Our Court held that, as the accident occurred prior to the repeal of the 1927 Act, the 1927 Act's broad scope of review was applicable. However, the *Littlejohn* panel also commented that they would have applied the broad scope in any event. *Littlejohn*, supra., 509 A.2d at p. 337. As the policy language is not included in the decision, we are unable to discern if this comment derived from language which would have placed the parties within § 7302(d)(1)(iii) under the historical note, or if this comment was merely dicta improperly applying the law to the policy. As such, we choose to emphasize that the comment is dicta, and decline further discussion on its implications.

6. While our Court did not explicitly address the applicability of the historical note to the *Bromley* policy language, the accident in *Bromley* occurred in 1979, meaning, presumedly, that the policy was issued pre–1980. The policy language stated that arbitration would "follow the provisions of the Arbitration Act of the jurisdiction where the arbitration takes place". Thus, we feel comfortable classifying *Bromley* as falling within part (1) of the historical note.

7. A fourth case cited by appellant that arguably fits into this category as well, is *Derry Twp. Mun. Auth. v. Solomon and Davis*, 372 Pa.Super. 213, 539 A.2d 405 (1988). While this case did not concern an auto accident coverage dispute, and ultimately applied the rules of common law arbitration anyway, the *Derry* panel did discuss at length whether statutory or common law arbitration should apply. On the

Hence, it is evident that it is not the status of a case as an uninsured/underinsured coverage dispute that invokes the broad scope of judicial review. Rather, it is the facts of the case, and/or the relevant policy language, that bring a matter within one of the three above categories.

As the accident *sub judice* occurred in 1984, category (1) is clearly inapplicable. We must examine the arbitration clause in the insurance policy to determine if the language therein falls within either category (2), derived from part (1) of the historical note, or category (3), derived from part (2) of the note.

The arbitration clause contained within the parties' agreement in 1984, and therefore applicable on the date of the accident [8], reads as follows, in relevant part:

basis of the § 7302 historical note, the panel decided that none of the "magic language", so to speak, which would invoke application of the 1927 Act, was contained in the parties' arbitration agreement.

8. The Dissenting Opinion by our colleague, Judge Del Sole, finds that a different endorsement, A1091, and not the above endorsement, PP0490, contains the applicable arbitration clause. A1091 provides that, where the damages amount awarded in arbitration exceeds the "minimum limit for bodily injury liability specified by the financial responsibility law of the state in which [the] covered auto is principally garaged.... either party may demand a right to a trial." The dissent construes this provision as granting appellant entitlement to a broader standard of review, in keeping with the aim of construing insurance contracts against the drafting insurer, and favorably to the insured. We find the dissent's position flawed in three major respects.

Initially, the parties have agreed that the above-quoted clause, and not the clause contained in A1091, is the applicable arbitration clause. As such, any argument the appellant-insured could have made based on A1091 has been waived, see *Winters,* supra. (where insurer failed to argue for narrow scope of review, insurer had waived the argument). We consult other provisions in our discussion *infra only* in an attempt to properly construe the language of the applicable clause in PP0490.

Secondly, as conceded by the dissent, the A1091 clause applies only where damages exceeding the specified amount have been awarded in arbitration, and no damages were awarded *sub judice.* The dissent, however, argues that the clause provides what is essentially one-sided relief to the insurer, as only the insurer will be likely to request a retrial where the damages are too high, making the clause unconscionable. However, the insurer is not obligated by law to provide for any judicial review of arbitration awards going beyond that which is provided in common law arbitration. See 42 Pa.C.S. § 7341, 31

ARBITRATION

If we and a covered person do not agree:

1. Whether that person is legally entitled to recover damages from the owner or operator of an uninsured motor vehicle or underinsured motor vehicle; or

2. As to the amount of damages: either party may make a written demand for arbitration. *Arbitration shall be conducted in accordance with the provisions of the Pennsylvania Uniform Arbitration Act . . . .*

(Emphasis supplied.)

The above-emphasized language neither states which act, the 1927 Act or the 1980 Act, is to be followed, nor refers to either act by title and section numbers. As part (2) of the historical note requires that the 1927 Act be specified in a post–1980 arbitration provision for broad judicial review to be available to the parties, this case does not fall within category (3); the *Geisler, Selected Risks,* and *Ragin* policies all specified that the 1927 Act would govern arbitration.

The above clause also does not include the date this agreement was formed, nor, for that matter, does any other clause or page in the contract reveal that information. Thus, it is impossible to tell on the basis of the above-emphasized language alone, whether this agreement qualifies as a pre-December 4, 1980 agreement specifying statutory arbitration under the law of the Commonwealth, as per part (1) of the historical note.

Pa.Code § 63.2. We are thus hesitant to label the A1091 clause as unconscionable.

Finally, we find it incorrect to attempt, as does the dissent, to equate the right to demand a trial on the issue of damages only, with the right to review the entire award for errors of law. The A1091 clause does not permit the insurer to relitigate questions of law, as is made clear by the language following the language relied upon by the dissent: "(I)f this demand [for a trial] is not made, *the amount of damages* agreed to by the arbitrators will be binding." Hence, even if the dissent is arguably correct in stating that the clause unconscionably favors the insurer, the remedy would not lie in extending the clause's language to provide for the insured a benefit never intended for the insurer.

Normally, any ambiguity resulting from a deliberate choice of language will be most strictly construed against the party which drafted the contract, herein the insurer. *Royal Ins. Co. (U.K.) Ltd. v. Ideal Mut. Ins. Co.*, 649 F.Supp. 130 (E.D.Pa.1986); *Rusiski v. Pribonic*, 511 Pa. 383, 515 A.2d 507, 510 (1986). However, where strong evidence supports a contrary interpretation, application of this rule is improper. *Royal Ins. Co.*, supra. A court may resort to an examination of external evidence to determine the intentions of the parties where the words used are, as here, ambiguous. *Greene v. Oliver Realty Co.*, 363 Pa.Super. 534, 526 A.2d 1192, 1194 (1987).

In the instant case, we have available to us as part of the record, information which demonstrates that the parties did not intend for the 1927 Act to apply.

The current arbitration clause is part of a 1984 amendatory endorsement to the policy. Included in the policy "package" that has been submitted into the record by appellee are all prior amendatory endorsements that have at one time or another been incorporated into this policy since 1980.[9] Certain portions of this policy have been revised several times. One portion that has been amended over time is the arbitration clause.

The arbitration clause contained in the 1980 amendatory endorsement sets forth the following, in relevant part:

ARBITRATION

If we and a covered person do not agree:

1) Whether that person is legally entitled to recover damages under this endorsement; or

2) As to the amount of damages; either party may make a written demand for arbitration....

The reference to the Pennsylvania Uniform Arbitration Act contained in the 1984 clause is absent; and, in fact, no

9. By these amendatory endorsements, some of which are dated 1980, we do know that the parties have been in a contractual relationship since 1980. However, we do not know as of what date in 1980 the contract was formed, thereby obligating us to perform this more protracted analysis.

mention whatsoever is made to any form of statutory arbitration. Clearly, then, as per § 7302(a), the parties' 1980 agreement called for common law arbitration only, which, as previously noted, provides for a very limited scope of judicial review.

It cannot be reasonably construed, placing these two clauses side by side, that the parties had an agreement before December 4, 1980, calling for statutory arbitration pursuant to the law of this Commonwealth, under part (1) of the historical note. The parties' 1980 agreement did not even provide for statutory arbitration, much less pursuant to a particular act.

Our construction is further buttressed by reference to the arbitration clause set forth in the *1981* amendatory endorsement:

ARBITRATION

If we and a covered person do not agree:

1) Whether that person is legally entitled to recover damages from the owner or operator of an

    a.   uninsured motor vehicle; or

    b.   underinsured motor vehicle if Underinsured Motorists Coverage is afforded; or

2) As to the amount of damages:

either party may make a written demand for arbitration. *Arbitration shall be conducted in accordance with the provisions of the Pennsylvania Arbitration Act of 1927*

. . . .

(Emphasis supplied.)

We deem the 1981 clause's inclusion of new language referring to the 1927 Act to be significant. It indicates a clear understanding on the part of insurer and insured that the prior 1980 clause did not provide for statutory arbitration under the prevailing law in Pennsylvania, and that an amendment to the clause was necessary to rebut the presumption in favor of common law arbitration.[10]

---

**10.** Likewise, we cannot ignore the fact that the specific reference to the 1927 Act, which would have brought this agreement within part

Hence, we find that part (1) of the historical note is equally inapplicable, placing this matter outside of category (2) as well.[11]

As the current fact situation and arbitration clause do not bring this matter within the parameters of any of the three enumerated categories above, the cases cited to us by appellant, in which our Court found the broad scope of judicial review applicable, are all inapposite.

Appellant's third argument fails as well.

■ Having found that none of the special circumstances invoking broad judicial review of arbitration awards in statutory arbitration are involved *sub judice*, we are limited to the narrow scope of review provided in §§ 7314 and 7315. Appellant has not argued that the award herein was the product of any fraudulent, irregular, or impartial conduct

(2) of the historical note, was deliberately omitted in the 1984 amendment. Obviously, it was the intention of the parties to provide by the 1984 amendment for arbitration under the 1980 Act, with its rules and inherent limitations upon judicial review of awards.

11. The Concurring Opinion by our colleague, Judge Montemuro, suggests that any discussion of part 1 of the historical note is unnecessary, and that our review of previous policy provisions clouds the proper focus of our analysis, the 1984 clause. The concurrence, however, misperceives why we have elected to consult previous endorsements.

As noted above, the current arbitration clause is part of a 1984 amendatory endorsement. However, an amendatory endorsement page does not necessarily alter any and all terms in its predecessor; it may only change selected words or phrases. To put it simply, it was entirely possible that the arbitration clause had not been changed from the time of the 1980 provision. Had the language referring to the Pennsylvania Uniform Arbitration Act been contained in the 1980 provision, it would not be legally correct to term the current clause a 1984 provision; rather, it would be a 1980 provision that had continued unchanged to the present day, qualifying appellant to receive the broad scope of judicial review pursuant to part 1 of the historical note.

For this reason, we feel that review of previous policy provisions is called for herein, and is the only course of action that would be equitable to the appellant-insured. Insurance policies are to be construed, where ambiguous, against the insurer and favorably to the insured. *Royal Ins. Co. (U.K.) Ltd.,* supra. We are obligated to scrutinize the 1984 clause, and its ambiguous terms, with an eye toward the broader construction, if justified on the basis of the 1980 policy language.

on the part of the arbitrators, or that the award contains any miscalculations or deficiencies in form. The parties would appear to be in agreement that the dispute before us is purely one concerning the arbitrators' findings of fact, and application of the law to those facts. This Court is not at liberty to review this award so broadly, and must now affirm the order below.

Order affirmed. Jurisdiction is relinquished.

MONTEMURO, J., files a concurring opinion in which McEWEN, TAMILIA and JOHNSON, JJ., join.

McEWEN and TAMILIA, JJ., concur in the result of the majority and join MONTEMURO, J., concurring opinion.

DEL SOLE, J., files a dissenting opinion.

MONTEMURO, Judge, concurring:

I agree that the decision of the trial court, wherein the court refused to modify or vacate the arbitration award, must be affirmed. However, my reasons for doing so are somewhat different from the reasoning set forth by the Majority of this Court; hence, this Concurring Opinion.

At the time of the 1985 automobile accident, appellant and the Keystone Insurance Company had a negotiated insurance contract which, beginning in 1984, had provided for the following in terms of arbitration:

## ARBITRATION:

If we and a covered person do not agree:

1. Whether that person is legally entitled to recover damages from the owner or operator of an uninsured vehicle or underinsured motor vehicle; or

2. As to the amount of damages: either party may make a written demand for arbitration. Arbitration shall be conducted in accordance with the provisions of the Pennsylvania Uniform Arbitration Act ...

The question to be answered in this case is what standard of review should have been employed by the trial court in reviewing the arbitration award. It is clear that the trial court reviewed the award for an error of law. Finding no error of law, the trial court affirmed the award.

Although the majority addresses the first paragraph of the 'Historical Note accompanying 42 Pa.C.S.A. § 7302 at length, I find this paragraph to be inapplicable under the circumstances of the present case. The agreement to arbitrate at issue here was not made prior to the effective date of the 1980 Arbitration Act. On the contrary, it was formulated four years after this date. The fact that the contracting parties had different negotiated arbitration agreements in the past should not alter our focus from the parties' agreement as it existed at the date of the accident. The only potentially applicable paragraph of the Historical Note is the second, and, as the majority correctly concludes, this paragraph does not apply because the parties' arbitration agreement does not specify the 1927 Act. Thus, the broad scope of judicial review employed by the trial court was an erroneous standard of review as this case does not fall within any of the enumerated categories of 42 Pa.C.S.A. § 7302(d)(1).[1]

Even though the trial court employed an erroneous standard of review, this Court may nevertheless affirm the trial court. I agree with the majority's finding that none of the circumstances which would have allowed the trial court to vacate or modify the arbitration award are even at issue in the case at bar. See 42 Pa.C.S.A. §§ 7314 and 7315. Thus,

---

1. I must respectfully disagree with the majority's view that an analysis of part (1) of the historical note is required because, in my view, when the parties executed the arbitration clause in 1984, we must assume they were contracting with knowledge of the law as it existed in 1984. Prior agreements between the parties, presumably made in light of the law at that time, should have no bearing on an interpretation of an arbitration agreement negotiated and entered into four years after the effective date of the 1980 Arbitration Act.

However, I am in full agreement with the majority's conclusions, expressed in footnote 8 of the Majority Opinion, in regard to the Dissenting Opinion by our distinguished colleague, Judge Del Sole, and accordingly I join therein.

because the end result reached by the trial court was correct, we need not disturb it.

McEWEN, TAMILIA and JOHNSON, JJ., join.

DEL SOLE, Judge, dissenting:

I must respectfully dissent, not because I find error with either the analysis set forth in the Majority opinion or in the Concurring Opinion by Judge Montemuro, but because my review of the record reveals other language governing arbitration contained in the policy at issue.

The declaration page of the policy lists nine endorsements. The endorsement listed as PP0490 contains the language cited in the Majority's opinion and Judge Montemuro's concurring Opinion. It provides in part:

If we and a covered person do not agree:

1. Whether that person is legally entitled to recover damages from the owner or operator of an uninsured motor vehicle or underinsured motor vehicle; or

2. As to the amount of damages; either party may make a written demand for arbitration. Arbitration shall be conducted in accordance with the provisions of the Pennsylvania Uniform Arbitration Act.

The endorsement which contains this provision is entitled Uninsured/Underinsured Motorist Coverage—Pennsylvania.

If this were the only language in the policy governing arbitration of an underinsured motorist claim, such as the one presented in this case, I would not hesitate in agreeing that a limited standard of review should apply. However, the policy at issue also contains a separate endorsement specifically governing underinsurance and setting forth an entirely different provision regarding arbitration.

Endorsement A1091 is also listed on the declaration page. Unlike the endorsement at PP0490 which refers to both uninsured and underinsured claims, this endorsement concerns solely underinsurance. It is entitled Underinsured Motorist Coverage–Split Limits and similar to PP0490 it contains provisions governing the arbitration of disputes.

However, unlike the language in PP0490 no mention is made of the Uniform Arbitration Act. Further it provides for judicial review in certain situations. No comparable language is contained in the arbitration provision found in the Uninsured/Underinsured endorsement. To perceive the obvious conflict it is necessary to carefully examine the detailed arbitration provision contained in A1091.

ARBITRATION

If we and a covered person do not agree:

1. Whether that person is legally entitled to recover damages under this endorsement; or

2. As to the amount of damages; either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally. Unless both parties agree otherwise, arbitration will take place in the county in which the covered person lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

1. Whether the covered person is legally entitled to recover damages; and

2. The amount of damages. *This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which your covered auto is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial.* This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

(emphasis added).

By comparing the two arbitration provisions contained in this policy it is readily apparent that a conflict exists.

Under the endorsement captioned Uninsured/Underinsured Motorist Coverage—Pennsylvania, the Uniform Arbitration Act would control, providing for a very limited review. However under the arbitration provisions of the Underinsured Motorist Coverage—Split Limits endorsement, judicial review is contemplated.

In my view, faced with these two conflicting endorsements, the court should apply the terms contained in endorsement A1091 to this action for underinsured motorist benefits. This endorsement speaks solely to underinsured motorist claims unlike PP0490, which covers both uninsured and underinsured motorist claims. Further, the heading of endorsement A1091, Underinsured Motorist Coverage— Split Limits, is specifically applicable to this policy which sets forth split limits for this coverage. Page 16 of the policy speaks to "split liability limits" and describes that term as the separate limits of liability for "each person" involved in any one accident and "each accident" involving bodily injury from any one auto accident. The declaration page of the policy indicates that split limits, as opposed to a single limit, were provided in this policy for underinsured motorist coverage and list these limits as $50,000 for each person and $100,000 for each accident. Application of endorsement A1090 would also be most favorable to claimant, which is proper in light of the fact that any ambiguity must be interpreted against the drafter of the contract, Appellee, Keystone. As stated in *Sykes v. Nationwide Mutual Insurance Company*, 413 Pa. 640, 641, 198 A.2d 844, 845 (1964):

> The person who writes with ink which spreads and simultaneously produces two conflicting versions of the same proposition cannot complain if the person affected by both propositions chooses to accept that which is more helpful to him and which is against the interest of the contract writer. This Court put the matter very succinctly in *Cadwallader v. New Amsterdam Cas. Co.*, 396 Pa. 582, 586, 152 A.2d 484, 487, 72 A.L.R.2d 1242:

"It is of course clear that if there be any ambiguity in the contract of insurance it must be resolved in favor of the insured since it was the insurer who wrote the contract (citing numerous cases)."

Yet even applying the arbitration provisions contained in A1091, the claimant faces another hurdle. The policy provides for judicial review of a decision which awards an amount of damages exceeding the "minimum limit for bodily injury liability specified by the financial responsibility law of the state in which [the] covered auto is principally garaged." Since no damages were awarded by the arbitrators in this case it would appear that judicial review is precluded. However, because I believe the provision allowing for judicial review in these limited circumstances solely favors the Appellee, insurance company, I would find it to be unconscionable and permit complete judicial review of this matter.

Our supreme court has observed that "in light of the manifest inequality of bargaining power between an insurance company and a purchaser of insurance, a court may on occasion be justified in deviating from the plain language of a contract of insurance." *Standard Venetian Blind v. American Empire Ins. Co.*, 503 Pa. 300, 307, 469 A.2d 563, 567 (1983). "The test of 'unconscionability' is two-fold. First, one of the parties to the contract must have lacked a 'meaningful choice' about whether to accept the provision in question. Second, the challenged provision must 'unreasonably favor' the other party to the contract." *Koval v. Liberty Mut. Ins. Co.*, 366 Pa.Super. 415, 419, 531 A.2d 487, 491 (1987).

Since it has been recognized that insurance contracts are typically contracts of "adhesion," *Id.* citing *Bishop v. Washington*, 331 Pa.Super. 387, 480 A.2d 1088 (1984); and *Germantown Manufacturing v. Rawlinson*, 341 Pa.Super. 42, 491 A.2d 138 (1985), there is no question that Appellant was not in a position to make a "meaningful choice" whether he should accept this arbitration provision. Secondly, the provision at issue unreasonably favors the insurer. It provides

for judicial review only where the award of damages by the arbitrators *exceeds* the limits specified by the financial responsibility law of the state. Thus, an insurer would be able to have large damage awards reviewed. An insured, dissatisfied with an award which is less than the required limits, would not have a similar benefit. This, in my mind, is unfair. It would be far better and reasonable for review to be provided where the damages *claimed* or *awarded* exceed the required limits. Judicial review was contemplated by the terms of this endorsement and fairness requires that it work to the benefit of both parties. Since Appellant in this case made a claim for $50,000, which is an amount greater than the mandatory minimum coverage required in Pennsylvania, I would permit judicial review of the arbitrators' award.

The arbitrators in a 2 to 1 decision declined to grant Appellant underinsured motorist benefits. At issue was a question of whether Appellant had breached the terms of the policy by entering into a settlement with a third party tortfeasor and signing a release without first notifying Keystone. In support of its position that Appellant precluded himself from pursuing an underinsured motorist claim, Keystone relies on language contained in endorsement PP0490. There under the heading of "Exclusions" it states:

A. We do not provide Uninsured Underinsured Motorist Coverage for bodily injury sustained by any person:

1. If that person or the legal representative settles the bodily injury claim without our consent.

Keystone maintains that Appellant violated this provision by signing a general release as a condition of his settlement with the third party tortfeasor's liability carrier. However, it must be noted that a similar exclusion is not present in the Underinsured Motorist Coverage/Split Limit endorsement numbered A1091. For the reasons provided above, I believe that A1091 is the endorsement which should be applied in this case. Although A1091 does not list a similar exclusion, the body of the policy does state under a section entitled "Our Right to Recover Payment:"

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

1. Whatever is necessary to enable us to exercise our rights; and

2. *Nothing after loss to prejudice them.*

(emphasis added).

Under this provision the issue then becomes whether Appellant's actions prejudiced Keystone's subrogation rights.

An individual involved in an auto accident with a third party tortfeasor is placed in a difficult position when trying to obtain insurance proceeds. The insurer of the third party tortfeasor may offer its limits to settle the claim but demand the execution of a general release. If that release is provided to the underinsured motorist carrier and that carrier refuses to allow its execution, a certain stalemate will occur.[1] It is my belief that in such a situation, the underinsurance motorist carrier should pay to its insured the amount offered by the liability carrier and then litigate the balance claimed to be owed under the underinsured motorist provisions of its policy. Thereafter, the underinsured motorist carrier can proceed with the claim against the third party tortfeasor.

This situation did not arise under the facts of the present case. Herein Keystone's insured executed a general release without consent in return for a settlement of the third

[1]. Such a situation, described as a "logjam", prompted the institution of an action against an underinsured motorist carrier in *Daley-Sand v. West American Ins. Co.*, 387 Pa.Super. 630, ——, 564 A.2d 965, 970 (1989) The trial court presented with an insurance contract which contained both an exhaustion of liability clause and a consent to settle clause fashioned an equitable remedy placing limits on the manner in which the insurer could withhold its consent to settlement with the third party tortfeasor. This court affirmed the trial court's order approving of its remedy which would authorize settlement and execution of a release without prejudice to a latter action for the underinsured motorist benefits. The trial court further directed that its order would be stayed for a period of thirty days to allow the underinsured motorist carrier an opportunity to tender its own draft to its insured in the amount offered by the liability carrier, thus perfecting its subrogation rights.

party tortfeasor's liability policy limits. That settlement in and of itself should not bar recovery. The underinsured motorist carrier should show that a viable, realistic right of subrogation would have existed absent execution of the release. The policy itself demands that prejudice be shown for it requires that its insured do "nothing after loss to prejudice" its right of subrogation. If the tortfeasor, in this instance a 16 year old boy, did not have assets at the time the release was executed which would be subject to a claim by the insured, Appellant, then Keystone, the underinsured motorist carrier, would not have suffered any prejudice by the execution of the release.

Even if endorsement number PP0490 and its exclusionary language were found to be applicable in this case, I would not alter my position that Appellant is entitled to recovery absent a showing by Keystone that it was prejudiced by Appellant's actions. In addition to the exclusionary language which refuses payment to a person who settles a bodily injury claim without Keystone's consent, the endorsement (PP0490) also contains the following clause:

> We will pay damages under this coverage arising out of an accident with an underinsured motorist carrier *only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlement.*
>
> (emphasis added).

These two provisions can not stand together for they put the claimant in a no-win situation. It is widely acknowledged that settlement with a third party tortfeasor cannot be made without the execution of a general release. Also, in some cases underinsured motorist carriers, do not "consent" to those settlements, their consent being required under the provisions of the endorsement. Nevertheless, the endorsement requires that settlement be obtained before the carrier will pay the underinsured motorist benefits. Unless underinsured motorist carriers are required to pay to their insureds a sum equal to the third party tortfeasor's liability limits when they elect to dissaprove a settlement

for the policy limits which contain a general release, they present their insureds with a Hobson's choice. The insured's cannot settle with the tortfeasor without losing their underinsured motorist coverage, and they cannot collect on the underinsured motorist coverage without settling with the tortfeasor. In view of this conflict which is presented to any claimant in Appellant's position, I believe that an underinsured motorist carrier who was not asked to consent to a release with a third party tortfeasor must demonstrate that this lack of consent in some way prejudiced its ability to recover available funds through its right of subrogation.

Further support for this review is found in the Motor Vehicle Financial Responsibility Act, 75 Pa.C.S. § 1701 et seq, (MVFRA) which controls the instant insurance policy. Section 1702 of the Act defines an Underinsured Motor Vehicle as:

A motor vehicle for which the limit of available liability insurance and self-insurance [§ 1787] are insufficient to pay losses and damages.

Also, § 1731(c) provides:

(c) Underinsured Motorist Coverage—Underinsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefore from owners or operators of underinsured motor vehicles.

The MVFRA act does not define an underinsured motor vehicle as a vehicle whose owner or operator has a sufficient personal estate that when coupled with the liability limits would meet the claimant's damages. Rather, a vehicle is underinsured when the insurance coverage available will not satisfy the injured parties damages. Once this occurs, the insured can look to his or her insurer for payment under the Underinsured Motorist Coverage. The purpose of the coverage is to provide protection for uncompensated damages to the insured and, also to relieve the insured of the burden of obtaining a judgment in excess of

the tortfeasor's policy limits and seeking execution against the tortfeasor's estate. The coverage is meant to deliver to the insured as quickly and efficiently as possible, complete compensation for injury. To permit insurer to withhold consent when third party liability limits are offered or to deny payment when those limits are paid without consent, but with no prejudice to the insurer, frustrates the purposes of coverage.

In conclusion I believe that this case should be reversed and the matter remanded for a trial by jury. At that time Appellant can establish damages and Keystone, who can challenge the damages, can also establish the assets of the third party tortfeasor at the time the release was executed which could have been available to mitigate any damage award entered against it. Only to the extent that Keystone suffered a real financial loss should it be entitled to mitigate its obligation.