635 A.2d 643

**NATIONWIDE INSURANCE COMPANY, Appellee,**

**v.**

**John CALHOUN, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 21, 1993.

Filed Dec. 15, 1993.

■■■■■■■

Daniel R. Sherzer, Norristown, for appellant.

Mark C. Schultz, West Conshohocken, for appellee.

Before McEWEN, DEL SOLE and HOFFMAN, JJ.

McEWEN, Judge:

This appeal has been taken from the judgment entered pursuant to the order which granted the petition of Nationwide Insurance Company (hereinafter appellee) and modified an amended arbitration award which had been entered in the amount of $400,000.00, in favor of appellant, John Calhoun. The trial court, finding that the arbitrators had committed an error of law in reforming the policy, modified the amended award of the arbitrators to provide for an award of $300,000.00 in favor of appellant. We affirm.

Appellant, John Calhoun, sustained serious personal injuries as a result of an accident involving his motorcycle and an automobile. At the time of the accident, John Calhoun resided with his mother during the week and with his sister and her husband on the weekends.

Having received the $100,000.00 bodily injury liability policy limits from the tortfeasor's carrier and the policy limits of $15,000.00 in underinsured benefits through his own motorcycle insurance policy, John Calhoun made a claim for underinsured motorist benefits under a policy issued by Nationwide Insurance Company to his mother, and under a separate policy issued by Nationwide Insurance Company to his sister and brother-in-law.

Appellant claimed to be a "resident relative", entitled to underinsured motorist benefits under both policies based upon his claim that he resided at both residences and was, therefore, a resident relative, entitled to uninsured motorist benefits, under both policies.

The policy issued by Nationwide to appellant's mother insured three cars which his mother owned and on which she carried liability and uninsured/underinsured motorist coverages of $100,000.00 per car. The policy issued by Nationwide to appellant's sister and her husband insured two cars with liability and uninsured/underinsured motorist limits of $50,-000.00 per car. Appellant's mother had an additional car on her policy that was owned by appellant's brother, Thomas, and that was insured under the policy issued by Nationwide Insurance Company with comprehensive coverage *only.* *Cf.* 75 Pa.C.S. § 1714. Appellant's sister also had an additional car on her policy, also owned by Thomas, and insured *only* for comprehensive coverage. Appellant sought to stack the underinsured coverages applicable to the five vehicles owned by his mother and sister and also claimed that he was entitled to underinsured motorist coverages applicable, by operation of law, to the vehicles owned by Thomas Calhoun on which there was no liability or uninsured/underinsured motorist coverages.

Pursuant to the terms of the Nationwide policies, the parties selected the arbitrators and submitted the disputes concerning coverage to the arbitrators. The arbitration panel, after a hearing, entered an award in the amount of $350,000.00 in favor of appellant.

Nationwide filed a petition in the Court of Common Pleas, pursuant to 42 Pa.C.S. § 7315, to vacate the arbitration award, contending that the award was contrary to law. The Court of Common Pleas granted the petition, vacated the award, and remanded the case to the arbitration panel with directions to enter an award consistent with policy coverages and to include an explanation of the award.

The arbitration panel filed an amended award [1] on December 11, 1992, which provided for an award of $400,000.00 in

1. The amended award provided, *inter alia:*

Based upon the evidence presented and the relevant policy language, the arbitrators found as a matter of fact and a matter of law that the claimant was a "resident relative" of the home of his mother, Doris Calhoun, with whom the claimant resided during the week.

Based upon the evidence presented and the relevant policy language, the arbitrators found as a matter of fact and a matter of law that the claimant was not a "resident relative" of the home of his sister and brother-in-law, Doris and Robert DiEva, with whom the claimant resided on weekends.

The claimant was further entitled to "stack" the underinsured motorist coverage on each vehicle covered by the underinsured motorist provisions of the Nationwide policy issued to Doris Calhoun.

Three of the vehicles covered by the Nationwide policy issued to Doris Calhoun, a Buick, a GMC truck and a Pontiac, were each covered by liability and underinsured motorist coverage in the amount of $100,000.00 per person and $300,000.00 per occurrence. Doris Calhoun's fourth covered vehicle, a Camaro owned by her son, Thomas, was covered by comprehensive and theft insurance.

The fourth covered vehicle was registered with the Pennsylvania Department of Transportation.

Although a vehicle registered with the Pennsylvania Department of Transportation is required to be insured against liability, prior to the accident in which the claimant was injured, the liability coverage on the vehicle was discontinued.

A majority of the arbitrators found that the coverages available with respect to the fourth covered vehicle and the requirements of law with respect to coverage were not properly explained to the insured by Nationwide and that Nationwide had an obligation under the policy and as a matter of law to provide such an explanation to its insured.

As a result of the failure of Nationwide to properly explain the coverages available to the insured as required by law, and as a result of the failure of Nationwide to obtain a written waiver of underinsured motorist coverage, a majority of the arbitrators found both as a matter of fact and as a matter of law that the Nationwide policy issued to Doris Calhoun should be interpreted to provide both liability and underinsured motorist coverage with respect to the fourth covered vehicle.

In view of the fact that each of the three other vehicles insured pursuant to the Nationwide policy issued to Doris Calhoun provided both liability and underinsured motorist coverage in the amount of $100,000.00 per person and $300,000.00 per occurrence, a majority of the arbitrators initially found as a matter of fact that had the insured been properly advised by Nationwide of the coverages available and required by law, the insured would have maintained both liability and underinsured motorist coverage on the fourth covered vehicle not owned by her in the amount of $100,000.00 per person and $300,000.00 per occurrence, the coverages which the insured maintained with respect to each of the three other covered vehicles. A majority of the arbitrators, therefore, concluded that the claimant was entitled as a "resident relative" of the household of Doris Calhoun, the insured, to collect underinsured motorist coverage in the amount of $100,000.00 on each of the four vehicles covered by

favor of Calhoun. Two of the three arbitrators found that John Calhoun resided with his mother *and that the fourth car on the policy, owned by Thomas, should be considered to have underinsurance coverage.* The latter determination was predicated on the fact that Mrs. Calhoun never signed a waiver of underinsurance benefits as required by 75 Pa.C.S. § 1791 when she covered the fourth car with comprehensive insurance only.

Nationwide filed a petition to modify the amended arbitration award and, following argument, the trial court granted the petition and modified the amended award to reflect a verdict of $300,000.00, representing the coverages on the three vehicles owned and insured by Doris Calhoun. This appeal timely followed.

Appellant contends that the order which modified the amended award of the arbitrators must be vacated since the trial court employed an incorrect scope of review in ruling on the petition to modify. Appellant argues in the alternative that the court erred in vacating and modifying the award since it was within the exclusive jurisdiction of the arbitrators to reform the provisions of the insurance policy to comply with the provisions of the Motor Vehicle Financial Responsibility Act.

Initially, we must resolve the issue of the appropriate standard of review to be employed by the trial court in ruling on a petition to vacate or modify an arbitration award where arbitration has been conducted pursuant to a policy provision providing for arbitration in accordance with the provisions of the Pennsylvania Arbitration Act of 1927.[2]

Statutory arbitration is currently provided for by the 1980 Uniform Arbitration Act, 42 Pa.C.S. §§ 7301 *et seq.* Section 7302(a) of the Act provides:

the policy of insurance issued by Nationwide to Doris Calhoun or a total recovery of $400,000.00.

2. Act of April 25, 1927, P.L. 381, *as amended,* 5 P.S. § 169, repealed by the Act of October 5, 1980, P.L. 693, 42 Pa.C.S. § 20002.

**(a) General Rule.**—An agreement to arbitrate a controversy on a nonjudicial basis shall be conclusively presumed *to* be an agreement to arbitrate pursuant to Subchapter B (relating to common law arbitration) unless the agreement to arbitrate is in writing and expressly provides for arbitration pursuant to this subchapter or any other similar statute, in which case the arbitration shall be governed by this subchapter.

42 Pa.C.S. § 7302(a).

The policy in the instant case is in writing and expressly provides for arbitration pursuant to the Arbitration Act of 1927. As noted by this Court in *Cigna Insurance Co. v. Squires,* 427 Pa.Super. 206, 628 A.2d 899 (1993):

Our legislature, when enacting the 1980 Uniform Arbitration Act, was cognizant of the changes in the standard of review contained in the 1980 Act from *the broad "error of law" standard of review contained in the 1927 Uniform Arbitration Act* (now repealed). The 1927 Act provided:

**§ 171  Modifying or correct award, grounds**

In either of the following cases the court shall make an order modifying or correcting the award upon the application of any party to the arbitration:

*       *       *       *       *       *

(d) *Where the award is against the law, and is such that had it been a verdict of the jury the court would have entered different or other judgment notwithstanding the verdict.*

Our legislature anticipated that difficulties might be caused for parties who intended arbitration to occur under the provisions of the 1927 Act, rather than those of the Act in its present form, when articulating the special applications provision of § 7302(d)(2). *See Popskyj* [*v. Keystone Insurance Co.,* 388 Pa.Super. 429, 565 A.2d 1184], *supra.* Therefore, a historical note as to *applicability* was added to § 7302 indicating under what circumstances § 7302(d)(2) should be applied. That note states:

**Application**

"The *provisions of 42 Pa.C.S. § 7302(d)(2)* (relating to special application) shall be applicable to any nonjudicial arbitration pursuant to:

"(1) An agreement made prior to the effective date of this act which expressly provides that it shall be interpreted pursuant to the law of this Commonwealth and which expressly provides for statutory arbitration.

"(2) An agreement heretofore or hereafter made which expressly provides for arbitration pursuant to the former provisions of the Act of April 25, 1927. . . ., relating to statutory arbitration."

*Cigna Insurance Co. v. Squires, supra* 427 Pa.Super. at 211, 628 A.2d at 901 (emphasis supplied).

■ Since the insurance policy in the instant case expressly provides for arbitration pursuant to the Arbitration Act of 1927, the standard of review applicable in a proceeding to modify or vacate an arbitration award is that set forth at Section 7302(d)(2) of the 1980 Arbitration Act:

(2) Where this paragraph is applicable *a court in reviewing an arbitration award* pursuant to this subchapter *shall,* notwithstanding any other provision of this subchapter, *modify or correct the award where the award is contrary to law* and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict.

42 Pa.C.S. § 7302(d) (emphasis supplied). *See also: Dearry v. Aetna Life and Casualty Ins. Co.,* 415 Pa.Super. 634, 639–41, 610 A.2d 469, 472–473 (1992); *Popskyj v. Keystone Insurance Co.,* 388 Pa.Super. 429, 565 A.2d 1184 (1989), *allo. denied,* 525 Pa. 602, 575 A.2d 567 (1990).

Thus, contrary to the argument of appellant, the trial court in the instant case properly reviewed the amended award of the arbitrators under the error of law standard provided by 42 Pa.C.S. § 7302(d)(2).

■ Appellant argues in the alternative that even if the trial court employed the appropriate standard of review, the arbitrators correctly concluded that the absence of a written

waiver of underinsurance coverage, as required by 75 Pa.C.S. § 1791, required that the policy issued to appellant's mother be reformed to provide for underinsurance coverage in the amount of $400,000.00.[3] Section 1731(a) of the MVFRL provides:

> No motor vehicle *liability* insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage). Purchase of uninsured motorist and underinsured motorist coverages is optional.

75 Pa.C.S. § 1731(a) (emphasis supplied).

Section 1734 of the MVFRL provides:

> A named insured may request in writing the issuance of coverage under section 1731 (relating to availability, scope and amount of coverage) in amounts equal to or less than the limits of liability for bodily injury.

75 Pa.C.S. § 1734.

Section 1791 of the MVFRL additionally provides:

> It shall be presumed that the insured has been advised of the benefits and limits available under this chapter provided the following notice in bold print of at least ten-point type is given to the applicant at the time of application for original coverage, and no other notice or rejection shall be required. . . .

75 Pa.C.S. § 1791.

This court has previously held that where an insurer delivers a policy of motor vehicle insurance providing liability coverage, where there is no signed waiver providing for lower underinsured and uninsured motorist coverages, as required by 75 Pa.C.S. § 1731 and 1734, the policy will be construed as

---

**3.** The arbitrators found that the damages sustained by appellant exceeded *all* available coverages, including those allegedly provided by the policy issued to appellant's sister.

providing underinsured and uninsured motorist coverages in amounts equal to the liability coverage purchased by the named insured. *See, e.g.: Botsko v. Donegal Mutual Insurance Co.*, 423 Pa.Super. 41, 620 A.2d 30 (1993); *Boyce v. St. Paul Property and Liability Insurance Co.*, 421 Pa.Super. 582, 592, 618 A.2d 962, 968 (1992). *See also: Gutman v. Worldwide Insurance Co.*, 428 Pa.Super. 309, 630 A.2d 1263 (1993); *Pennsylvania Financial Responsibility Assigned Claims Plan v. English*, 427 Pa.Super. 105, 628 A.2d 847 (1993).

The arbitrators in the instant case found that Doris Calhoun, the named insured under the policy issued by Nationwide and pursuant to which appellant was awarded underinsured motorist benefits, did not own the fourth vehicle and did not insure it for liability coverages. While *every* vehicle registered and garaged in Pennsylvania *must* be insured for liability coverage pursuant to the Motor Vehicle Financial Responsibility Law, this is a duty borne by the owner, in this case Thomas Calhoun, the brother of appellant, and not Doris Calhoun. *Cf. Allen v. Erie Insurance Co.*, 369 Pa.Super. 6, 534 A.2d 839 (1987); *DeMichele v. Erie Insurance Exchange*, 385 Pa.Super. 634, 561 A.2d 1271 (1989). The express provision of the MVFRL that appellant here relies on provides that:

[n]o motor vehicle *liability* insurance policy shall be delivered or issued for delivery in this Commonwealth . . . unless . . . underinsured motorist coverages are offered therein . . . in amounts as provided in section 1734. . . .

75 Pa.C.S. § 1731(a) (emphasis supplied).

Section 1734 provides that the insured may request in writing coverages "in amounts *equal to or less than the limits for bodily injury*". The policy covering Thomas Calhoun's vehicle, however, was *not* a "motor vehicle *liability* insurance policy" and thus did not provide for *any* coverages for "bodily injury", much less $100,000.00 of liability coverage.

We find, without hesitation, that the trial court properly concluded that Sections 1731 and 1734 of the Motor Vehicle

Financial Responsibility Law were, as a matter of law, inapplicable to a policy providing for comprehensive coverage only for a non-owned vehicle. Thus, the majority of the arbitrators committed an error of law in concluding that the Motor Vehicle Financial Responsibility Law provided authority for them to rewrite the policy issued to Doris Calhoun so as to provide $100,000.00 in underinsured motorist benefits for the vehicle owned by Thomas Calhoun, for which Doris Calhoun was not responsible and for which *no* liability coverage whatsoever had been purchased.

We, therefore, affirm the judgment entered on the amended arbitration award as modified by the trial court.

Judgment affirmed.