564 A.2d 965

**Katherine DALEY–SAND and Richard M. Sand, H/W**

v.

**WEST AMERICAN INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued May 23, 1989.

Filed Sept. 27, 1989.

632

William Hourican, Philadelphia, for appellant.
John P. McKelligott, Philadelphia, for appellees.
Mitchell S. Clair, Media, amicus curiae.

Before BECK, JOHNSON and HOFFMAN, JJ.

JOHNSON, Judge:

This appeal presents the question of whether underinsured motorist coverage (UIM coverage) provided by the insurer as required by the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. §§ 1701 *et seq.*, is sufficiently nullified by the operation of a consent to settle clause in an insurance contract so that the public policy of the Commonwealth as expressed in the MVFRL is contravened. We conclude that it is. We therefore uphold the equitable remedy fashioned by the trial court placing limits on the manner in which the insurer may withhold consent to settle with the underinsured tortfeasor.

Underinsured motorist coverage protects the insured driver from the risk that a negligent driver of another car will cause injury to the insured and will have inadequate liability coverage to compensate for the injuries. *Wolgemuth v. Harleysville Mutual Insurance Co.*, 370 Pa.Super. 51, 535 A.2d 1145 (1988). The Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. § 1701 *et seq.*, requires that:

No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth ... unless uninsured motorist and underinsured motorist coverages are provided therein or supplemental thereto ...

75 Pa.C.S. § 1731(a).

On March 17, 1985 appellee Katherine A. Daley–Sand sustained serious injuries when a vehicle in which she was a passenger was hit by an automobile owned and driven by Charles Vesseles. Vesseles' automobile insurance policy with Keystone Insurance Company has a liability limit of $50,000.00. Daley–Sand is a named insured on a policy provided by appellant West American Insurance Company (West American). Under this policy Daley–Sand has paid premiums for and is thus provided with UIM benefits in the amount of $300,000.00 per accident. It is not disputed that Daley–Sand's damages exceed Vesseles' policy liability lim-

it. The amount of damages is not at issue here, nor is it disclosed or discussed.

Daley–Sand's contract with West American provides that West American will:

pay damages which a covered person is legally entitled to recover from the owner .... of [the] ... underinsured [tortfeasor's] motor vehicle ... because of bodily injury sustained by a covered person ...

. . . .

*only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements.*

. . . .

The amount of damages we will pay is subject to the provisions of our Limit of Liability.

(Emphasis supplied). The contract also provides that: "We do not provide Uninsured/Underinsured Motorists Coverage for bodily injury sustained by any person: 1. If that person or the legal representative settles the bodily injury claim without our consent."

On October 14, 1987 Keystone offered to settle with Daley–Sand for the full amount of Vesseles' coverage, $50,000.00, if Daley–Sand would sign a release for Vesseles. Daley–Sand notified West American of the settlement offer and asked for its consent to settle for this amount and to sign a release for Vesseles. By letter of November 17, 1987, and again by letters of December 28, 1987 and January 26, 1988, West American refused to consent. In each letter West American gave as its sole reason for withholding consent to settle that it was continuing its investigation into whether, in giving consent, it would be relinquishing potential subrogation opportunities.

On May 20, 1988 Daley–Sand filed a Petition to Resolve Subrogation with the Court of Common Pleas. The petition alleged that, if Daley–Sand were to settle with Keystone without West American's consent, she would, under the terms of her insurance contract, waive her UIM benefits, and that West American had refused to give its consent to

an offered settlement. Daley–Sand alleged that this refusal to consent to a settlement so as to effectively prevent her from collecting her contractually provided benefits, which were offered pursuant to the MVFRL, constituted "conduct which is contrary to public policy, contrary to the legislative purpose of the MVFRL and frustrates the legitimate expectations of an insured victim." Daley–Sand asked the court to enter a Rule to show Cause why West American's subrogation rights should not be deemed waived, unless within thirty days West American circumvented the settlement with Keystone by paying to Daley–Sand its draft in the amount of the settlement offer in exchange for the tendered draft of Keystone, and for the court to enter such other relief as it may find appropriate.

By Order and Opinion of November 17, 1988, the court granted Daley–Sands' petition. The court found that enforcement of the consent to settle clause as exercised by West American would frustrate the legislative purpose of providing UIM coverage as well as the legitimate expectations of the insured who purchased coverage. The court therefore styled equitable relief by authorizing Daley–Sand to settle with Keystone for $50,000.00 and to execute a full release in favor of Charles Vesseles while at the same time preserving her right to proceed with an underinsured motorist arbitration against West American. The court then stayed this relief for a period of thirty days to allow West American to tender its own draft for $50,000.00 to Daley–Sand to substitute for the Keystone settlement, thus perfecting its subrogation rights.

West American did not tender the draft to Daley–Sand but appealed from the November 17 order on December 16, 1988. Judgment was entered on January 23, 1989. On appeal West American challenges the propriety of the trial court's equitable remedy by arguing that the trial court erred in modifying the consent to settle provision of the policy, that the court erred by eroding West American's subrogation rights, and that the court erred in ruling that

the amount of the UIM claim should be decided by litigation against the tortfeasor.

■■■ Two preliminary matters must be disposed of before we reach the principal issues in this case. First, West American filed no exceptions to the court's order of November 17th. Generally, issues not brought before the trial court in exceptions following a declaratory judgment in the form of a decree nisi are waived on appeal. *Emerald Energy Enterprises, Inc., v. Karsnak,* 288 Pa.Super. 31, 430 A.2d 1198 (1981). However, we have held that where the order appealed from contained no findings of fact, no conclusions of law and no language to suggest that the order was anything but a final order or that the parties were required to file exceptions to preserve a right of appeal, failure to file exceptions will be excused. *Palladino v. Dunn,* 361 Pa.Super. 99, 521 A.2d 946 (1987); *Storti v. Minnesota Mutual Life Insurance Company,* 331 Pa.Super. 26, 479 A.2d 1061 (1984). Because the trial court's order contained no findings of fact or conclusions of law and because the order by its own terms became final after thirty days if West American did nothing, West American's failure to file exceptions does not defeat appellate review.

■■■ Second, West American challenges the trial court's jurisdiction over disputes arising under the insurance contract because the contract contains an arbitration clause. This challenge fails. The arbitration clause provides:

If we and a covered person do not agree:

1. Whether that person is legally entitled to recover damages from the owner or operator of an uninsured motor vehicle or underinsured motor vehicle;

2. As to amount of damages; either party may make a written demand for arbitration.

The disagreement between West American does not arise under either of the above-enumerated categories. Rather, Daley–Sand's objection is that West American invokes the consent to settle clause in a way that frustrates the intent of the legislature and public policy by effectively precluding

her from collecting the UIM benefits for which she has contracted.

■ The law is clear that, although a case turning on the application or construction of an uninsured motorist clause is within the exclusive jurisdiction of the arbitration system, when the issue is whether a particular provision of the contract is contrary to a constitutional, legislative or administrative mandate, the courts properly exercise their jurisdiction over the entire matter. *Wilbert v. Harleysville Mutual Insurance Co.*, 254 Pa.Super. 217, 385 A.2d 987 (1978); *In re Webb and United Services Automobile Association*, 227 Pa.Super. 508, 323 A.2d 737 (1974). Daley–Sand specifically challenged the operation of the consent to settle clause on the ground that it was against public policy and legislative intent. West American's tenuous argument that the dispute should have been arbitrated because Daley–Sand stated the issue in terms of the "operation" of the clause is unpersuasive. We see no distinction between a claim that a clause per se violates public policy and a claim that the operation of the clause within the contract violates public policy. The trial court properly exercised jurisdiction over this dispute.

■■ We now reach the chief issue on appeal, whether West American's withholding consent and thus effectively denying UIM benefits violates legislative intent and public policy. Public policy means that the law can restrict freedom of contract or private dealings for the good of the community. *Tallman v. Aetna Casualty and Surety Co.*, 372 Pa.Super. 593, 539 A.2d 1354, *alloc. denied* 520 Pa. 607, 553 A.2d 969 (1988) (Johnson, J. dissenting). Public policy is determined with reference to the laws and legal precedents rather than from general considerations of supposed public interest. *Guardian Life Insurance Co. v. Zerance*, 505 Pa. 345, 479 A.2d 949 (1984).

The Motor Vehicle Financial Responsibility Law requires that uninsured and underinsured motorist coverage must be part of every automobile insurance contract. We do not speculate upon general public interest but rather conclude

from a clear and unambiguous statute that insurers who do business in this Commonwealth must provide UIM coverage. A court of this Commonwealth may decide that a challenged contractual clause is void as contrary to law, *Insurance Company of North America v. Hippert*, 354 Pa.Super. 333, 511 A.2d 1365 (1986). We may also decide that a clause as applied executes an injustice. *See Wilbert v. Harleysville Mutual Insurance Co., supra.*

West American justifies withholding consent to settle by elevating its future subrogation rights to primary importance, suggesting that it may take as long as it chooses to research its subrogation opportunities and thus to indefinitely postpone payment of UIM benefits. In so arguing, West American essentially proffers that its subrogation rights are primary over all other rights at issue. We cannot seriously entertain this proposition.

■ The principle underlying an insurance contract is that the insurer assumes the risk of possible non-recovery from the tortfeasor in return for paid premiums for insurance coverage. When an insurer pays a claim under a policy, it is actually paying the debt of the tortfeasor. The insurer is only secondarily liable; it is the tortfeasor who is primarily liable. Once the insurer has paid a claim to the insured, it may then stand in the shoes of the insured and assert the insured's rights against the tortfeasor. The right to stand in the insured's shoes and to collect from the tortfeasor once it has paid the insured an amount representing the tortfeasor's debt is called the insurer's right to subrogation.

■ Subrogation is an equitable principle. First, it presupposes an actual payment and satisfaction of the debt or claim at issue by the one who asks for the right to subrogate. *Demmery v. National Union Fire Insurance Company*, 210 Pa.Super 193, 232 A.2d 21 (1967). As we have written:

It is well established that the action for subrogation is one based on considerations of equity and good conscience. The goal is to place the burden of the debt upon

the person who should bear it. The right of subrogation may be contractually declared or founded in equity, but even if contractually declared, it is to be regarded as based upon and governed by equitable principles. [*Associated Hospital Service v.*] *Pustilnik*, [497 Pa. 221, 439 A.2d 1149 (1981)]. It has often been said that the equitable doctrine of subrogation places the subrogee in the precise position of the one to whose rights and disabilities he is subrogated. (citations omitted).

. . . .

However, as the subrogee stands in the precise position of the subrogor the subrogee should be limited to recovering in subrogation the amount received by the subrogor ..., for equity will not allow the subrogee's claim to be placed ahead of the subrogor's.

*Allstate Insurance Co. v. Clarke*, 364 Pa.Super. 196, 201, 527 A.2d 1021, 1023 (1987). Thus, whatever the contractual language regarding subrogation, the equitable nature of subrogation is not altered.

Finally, subrogation is not an inflexible legal concept but, as an exercise of equitable powers, it is to be carried out with an:

exercise of a proper equitable discretion, with a due regard for the legal and equitable rights of others.

*American Surety Co. of New York v. Bethlehem National Bank of Bethlehem*, 116 F.2d 75, *rev'd on other grounds*, 314 U.S. 314, 62 S.Ct. 226, 86 L.Ed. 241, 138 A.L.R. 509 (1941).

■ First, West American has not yet paid Daley–Sand's claim. Thus, it has only a possible, future subrogation right. Further, West American has presented no evidence to this court that its withholding of consent was reasonable. While not a contract requirement, reasonableness of withholding of consent would be a proper factor for a court to consider when fashioning an equitable remedy. For instance, in the Unfair Insurance Practices Act, 40 P.S. § 1171.1 *et seq.*, "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in

which the company's liability under the policy has become reasonably clear," 40 P.S. § 1171.5(a)(10)(vi), is, if committed with regularity, an unfair business practice. In this case, West American does not contest its liability. However, neither does it attempt to show that its withholding of consent was in good faith or was in any way reasonable; it simply makes the bald claim to subrogation rights. Keeping in mind that one who comes to equity must do equity, we cannot give due consideration to West American's defense of entitlement to its subrogation rights, an equitable principle. Nor did the trial court, and we find the chancellor's determination entirely proper.

The propriety of the trial court's particular declaratory judgment remedy is a question of first impression in this Commonwealth. As guidance, the trial court followed a practice lately employed in other jurisdictions that had been affirmed by the appellate courts in those states. These courts found, as we do, a public policy supporting UIM coverage and that certain contractual provisions, either by their mere existence or by their operation, serve to frustrate the legislatively mandated provision of UIM coverage.

The seminal case employed for guidance by many jurisdictions is *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983). At issue in this consolidated case involving the same insurer under a no-fault act was whether an exhaustion (of the underinsured tortfeasor's liability) clause and a consent to settle clause frustrated public policy and whether the trial courts' equitable remedies were proper. Holding that the insurer's application of these clauses did indeed frustrate public policy, the trial courts devised remedies that involved limiting the time the insurer could withhold consent, after which the insurer could either submit its own draft to prevent the settlement or lose its subrogation right. The Supreme Court of Minnesota affirmed the trial courts' actions. The insurer argued that preservation of its subrogation rights was paramount. Therefore, key to the court's analysis was a balancing of the equities.

In *Vogt v. Shroeder*, 129 Wis.2d 3, 383 N.W.2d 876 (1986), the court held, citing *Schmidt*, that an insurer has a right of subrogation to the extent that the underinsured's insurer has paid benefits to its own insured. Its rationale was as follows:

> Looking at the question from the viewpoint of a motorist who is injured by an underinsured tortfeasor, it would appear only just that a motorist who carries underinsured coverage should not be worse off than if he were injured by a fully insured motorist. Such motorist ought to be able to "settle" with the tortfeasor's insurance company to the extent of that tortfeasor's coverage. The motorist should not be required to sue for what is being offered and thus incur larger fees and expenses just to accommodate the underinsurance company's desire to protect its subrogation rights. At least the motorist should not be obligated to do so if it is possible, under the terms of the contract and in justice, for the injured party to receive the settlement proceeds, or its equivalent, and the underinsurer is still able to protect its subrogation rights.

*Vogt*, 383 N.W.2d at 882. The court then affirmed a trial-court-fashioned remedy similar to the one in *Schmidt*. The court recognized that the insurer's withholding of consent to settle because of its concern that its future subrogation interest would be jeopardized did not weigh strongly in a balancing of the equities against the insured's right to underinsured coverage.

Most recently, the Superior Court of New Jersey, Appellate Division, relied on *Schmidt v. Clothier* and applied the same kind of equitable remedy in *Longworth v. Van Houten*, 223 N.J.Super. 174, 538 A.2d 414 (1988). The precise issue before the court in two consolidated cases was how an exhaustion of remedies clause, a consent to settle clause and a subrogation clause functioned with regard to UIM coverage and whether their application frustrated the public policy behind UIM coverage. In the case involving a consent to settle clause and the insurer's subrogation right, the court recognized that the sole purpose of the consent to

settle clause was protection of the insurer's subrogation rights. It also recognized that enforcement of this clause casts the insured victim into a limbo that "utterly frustrates the legislative purpose of providing maximum and expeditious protection to the innocent victims of financially irresponsible motorists", *Longworth*, 223 N.J.Super. 184, 538 A.2d at 419, while it also frustrates the legitimate expectations of the insured victim who purchases UIM coverage. Therefore, the court imposed the *Schmidt* remedy of giving the insurer a limited time period during which it may investigate following a settlement offer.

It is not, of course, our function to rewrite contracts of insurance. However, it is our function to see that a contract does not violate clear public policy. Therefore, we now hold that the law of this Commonwealth requires that we see to it that clear public policy requiring UIM coverage not be frustrated by conflicting clauses in an insurance contract. Hence, we uphold the trial court's equitable remedy. As the New Jersey Superior Court wrote in *Longworth*, the insurance industry may rewrite their contracts in a way that will reconcile the purposes of the statute with the legitimate rights of all the affected parties, or the legislature may decide to prescribe a method for bringing about this goal. We hold only that the operation of the consent to settle clause in this case as now written frustrates public policy.

We conclude that the trial court's remedy fairly balances the equities in this case, Daley–Sand's right to paid-for and legislatively mandated UIM coverage balanced against the insurer's *future* subrogation opportunities—recall that West American has paid nothing to Daley–Sand. The order breaks the logjam by authorizing Daley–Sand to accept the settlement offer without waiving her UIM coverage, but the order will have this effect only if West American refuses to both consent to the settlement or to tender its own draft to Daley–Sand in the amount of the settlement, $50,000.00. The thirty days given West American by the court is an eminently reasonable amount of time, considering that West

American, by its own admission, has been continuing the investigation into its possible subrogation opportunities at least since its letter to Daley–Sand of November 17, 1987.

Last, West American argues that a statement in the trial court's opinion is erroneous. This contention is without merit. In the trial court's remedy scheme, Daley–Sand may proceed to litigation against the tortfeasor if she decides to refuse the offer made by the tortfeasor represented by West American's draft. West American argues that any finding of damages must be made in arbitration, not in litigation. It is true that the insurance contract provides that if West American and the insured do not agree on the amount of damages, then the parties must proceed to arbitration under the Pennsylvania Uniform Arbitration Act. However, there is no issue here between Daley–Sand and West American regarding amount of damages. The contract does not, of course, bind the tortfeasor. In light of the existence of the present litigation brought about by West American's refusal to deal in a reasonable way with a legitimate claim of its insured, we find West American's misdirected effort to spare the courts the burden of additional litigation to be disingenuous.

Because we conclude that the trial court's remedy in this case is entirely consistent with the law of the Commonwealth, we will affirm the trial court's order.

Order affirmed.