**Eugene A. FISHER, Administrator of the Estate of Julie Lynn Fisher, Deceased, Plaintiff,**

v.

**USAA CASUALTY INSURANCE COMPANY, Defendant.**

Civ. A. No. 90–2602.

United States District Court, E.D. Pennsylvania.

April 30, 1991.

Richard J. Orloski, Orloski & Hinga, Allentown, Pa., for plaintiff.

William E. Schantz, Allentown, Pa., for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

This declaratory judgment action raises many issues concerning the rights of the parties under an insurance policy issued to Julie Lynn Fisher before her death in an automobile accident. The defendant and plaintiff have each filed motions for summary judgment. For the reasons stated below, I grant defendant's motion for summary judgment and deny plaintiff's motion for summary judgment.

### I.

None of the facts concerning the underlying accident are in dispute. On the morning of October 13, 1986 Julie Lynn Fisher was driving her car on U.S. Route 22 in Lehigh County, Pennsylvania, when she was in an accident. Her car was hit from behind by a tractor trailer which propelled her into a stationary tractor trailer. She died that morning. Eugene A. Fisher was granted Letters of Administration by the Register of Wills, Lehigh County, to administer the Estate of his daughter, Julie Lynn Fisher.

Several months after the accident, Eugene A. Fisher filed two civil actions in the United States District Court for the Eastern District of Pennsylvania. The first action named the driver of the tractor trailer that struck Ms. Fisher's car and his employer as defendants. *See Eugene A. Fisher, Administrator of the Estate of Julie Lynn Fisher, Deceased v. L. & W. Transportation, Inc.,* No. 86–7109. The second action named the owner of the tractor trailer as a defendant. *See Eugene Fisher, Administrator of the Estate of Julie Lynn Fisher, Deceased v. Unzicker Trucking, Inc.,* No. 87–2655. These actions were consolidated.

On December 7, 1987 the plaintiff executed a release and settlement agreement

with the defendants in the consolidated action. In consideration for a payment of one million dollars to the estate of Julie Lynn Fisher, plaintiff released these defendants from all claims. See Plaintiff Exhibit B.

At the time of the fatal accident, the defendant in the action now before me had issued one insurance policy directly to Julie Lynn Fisher, as the insured and operator, providing, *inter alia,* underinsured motorist coverage in the amount of one hundred thousand dollars for each person and a total of three hundred thousand dollars for each accident. See Plaintiff Exhibit C. In addition, the defendant had issued one insurance policy covering two vehicles to plaintiff Eugene A. Fisher, as the insured and as operator along with his wife, Doris J. Fisher, providing each vehicle with, *inter alia,* underinsured motorist coverage in the amount of one hundred thousand dollars for each person and a total of three hundred thousand dollars for each accident. See Plaintiff's Exhibit C.

When killed in the accident, Julie Lynn Fisher was driving her own car insured by defendant, not one of the cars owned by Eugene A. Fisher and insured by defendant under the policy issued to Eugene A. Fisher.

## II.

Summary judgment is appropriate if there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Small v. Seldows Stationery,* 617 F.2d 992, 994 (3d Cir.1980). The court does not resolve questions of disputed fact, but simply decides whether there is a genuine issue of fact which must be resolved at trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Ettinger v. Johnson,* 556 F.2d 692 (3d Cir. 1977). The facts must be viewed in the light most favorable to the opposing party, and reasonable doubt as to the existence of a genuine issue of material fact is to be resolved against the moving party. *Continental Insurance Co. v. Bodie,* 682 F.2d 436, 438 (3d Cir.1982). However, "there is

no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citations omitted). The inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury, or whether it is so one-sided that one party must prevail as a matter of law. *Id.* at 252, 106 S.Ct. at 2512.

## III.

The parties have filed cross-motions for summary judgment. Briefly, defendant argues that all issues before the court should be submitted to arbitration pursuant to the arbitration provision of the insurance policy and because plaintiff initially agreed to and participated in the arbitration process. In the alternative, defendant argues that plaintiff's failure to comply with the consent-to-settle provision of the insurance policy extinguishes all of defendant's obligations under the policy. In plaintiff's motion, he argues that no genuine issue of material fact exist as to the amount of damages suffered by the deceased; that the underinsured motorist coverage under both the insurance policy issued to the Julie Lynn Fisher ($100,000.00) and Eugene A. Fisher, plaintiff, ($100,000.00 for each of two vehicles, totalling $200,000.00) should be stacked to provide $300,000.00 in underinsured motorist coverage; and that the set-off provision of the insurance policy issued to Julie Lynn Fisher does not permit the defendant to use the one million dollar settlement received by plaintiff to eliminate the defendant's obligations under the policy.

## IV.

Jurisdiction over plaintiff's claims is established by diversity of citizenship of the parties, 28 U.S.C. § 1332. My function is to apply the law of Pennsylvania, *Wolk v. Saks Fifth Ave. Inc.,* 728 F.2d 221 (3d Cir.1984). After reviewing the law of Pennsylvania concerning many of legal is-

sues raised in this action, it is clear that I do not have the benefit of firm guidance from the Pennsylvania Supreme Court. Nonetheless, I must "predict the position which that court would take in resolving this dispute." *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 363 (3d Cir.1990).

■ Initially I must determine whether plaintiff's participation in the arbitration process binds him to proceed in that forum. It is uncontested that in his correspondence to defendant of December 10, 1987, plaintiff requested that a arbitration hearing be convened. Also, plaintiff selected an arbitrator, met with defendant's counsel, and scheduled a hearing. However, it is unclear from defendant's motion and affidavit whether an arbitration hearing was ever held. See defendant affidavit of Gary S. Duke ¶ 18. Plaintiff abandoned arbitration and pursued this declaratory judgment action.

Considering that defendant has failed to demonstrate any prejudice resulting from plaintiff's decision to seek a judicial determination, or that plaintiff has obtained any advantage by his conduct, I am not persuaded that plaintiff's conduct warrants refusing him recourse to this court. *See McCabe v. Prudential Property and Casualty Insurance Company*, 1989 WL 143195 (E.D.Pa.1989) (Court permitted plaintiff to seek judicial determination of policy set-off provision of insurance policy though plaintiff had initiated arbitration process.) Moreover, plaintiff's right to a judicial determination is governed primarily by the language of the arbitration clause of the policy. The language in the policy is identical[1] to that interpreted in *McCabe v. Prudential Property and Casualty Insurance Company*, 1989 WL 143195 (E.D.Pa. 1989), and is essentially the same as that interpreted by the Third Circuit in *Meyers*

*v. State Farm Insurance Co.*, 842 F.2d 705 (3d Cir.1988). There, the Third Circuit held that the policy requires arbitration of matters concerning "fault and amount, and that it does not mandate arbitration of disputes over coverage." *Id.* at 707. *See Aetna Casualty and Surety v. Kauffman*, 1991 WL 951 (E.D.Pa.) (Stacking provision interpretation subject to judicial determination); *Nonemacher v. Atena Casualty & Surety Co.*, 710 F.Supp. 602 (E.D.Pa.1989) (Stacking provision interpretation subject to judicial determination); *Schemberg v. Progressive Casualty Ins. Co.*, 709 F.Supp. 620 (E.D.Pa.1989) (Set-off provision interpretation subject to judicial determination.); *Prudential Property Cas. Ins. Co. v. Nayerahamadi*, 593 F.Supp. 216 (E.D.Pa.1984) (Issue whether consent-to-settle provision is void as against public policy is a judicial determination).

The arbitration clause of the insurance policy between the parties and relevant case law interpreting this language establishes that arbitration is not appropriate for determining the legal raised in these motions.[2] In particular, the issue of whether the consent-to-settle provision is enforceable under the law of Pennsylvania is a matter for judicial consideration.

## V.

Turning to the dispositive issue, defendant argues that plaintiff is denied all underinsured motorist coverage under the policies because of his failure to obtain defendant's consent before releasing and settling with the tort-feasors in the consolidated civil action. Defendant relies on correspondence between the parties to establish the relevant facts. In plaintiff's counsel's letter of May 28, 1987, he notes, *inter alia*, that he has filed suit against the tort-

---

**1.** The insurance policy between the parties states that arbitration is required "If we and a covered person do not agree: 1. whether that person is legally entitled to recover damages from the owner or operator of an uninsured motor vehicle or underinsured motor vehicle; 2. As to the amount of damages ..." In *McCabe*, the court interpreted: "If we and a covered person do not agree: 1. Whether that person is legally entitled to recover damages

from the owner or operator of an uninsured motor vehicle or underinsured motor vehicle; 2. As to the amount of damages ..." *Id.* at 3.

**2.** The amount of damages sustained by the deceased, Julie Lynn Fisher, is a matter appropriate for arbitration. However, because I grant defendant's motion for summary judgment, this issue is moot.

feasors and that the tort-feasors have one million dollars in insurance coverage. This letter also gives notice of plaintiff's under-insurance claim and that "we [plaintiff] have offered to settle [with the tort-feasors] for the policy limits of one million dollars PROVIDED that the settlement is effected by Friday, June 5, 1987." Defendant Exhibit E Plaintiff letter of May 28, 1987.

In its letter of June 11, 1987, defendant acknowledges receipt of plaintiff's letter of May 28, 1987 and states that under the limit of liability provision of the policy, if "any recovery you receive from the tort-feasor exceeds the applicable policy limits, we will be unable to assist you under the Underinsured Motorist Provision of the policy." Defendant Exhibit E Defendant letter of June 11, 1987. Here, defendant interprets the excess coverage provision of the policy; any monies due plaintiff under the policy would first be reduced by the amount of money plaintiff received from the tort-feasors. If the amount received by the plaintiff from the tort-feasor exceeds the amount plaintiff is due under the policy, then defendant owes plaintiff nothing.

In his response of June 23, 1987, plaintiff states that "[r]eceipt is acknowledged of your letter of June 11, 1987 claiming that there would be no underinsurance claim IF [sic] we settle this tortfeasor case for One Million ($1,000,000.00) Dollars." Plaintiff goes on to argue that defendant is "making two errors: 1) under Pennsylvania law, there is a "stacking" of underinsurance benefits for all automobile policies insuring the household, and this increases the extent of your coverage; and 2) the Superior Court of Pennsylvania in *Houston vs. National Mutual Insurance Company* [358] Pa Sup [618], 518 A2d 311 (1986) specifically rejected the notion that the set-off runs from the amount of the settlement, but rather instead indicated that the set-off runs from the damages.... As soon as the case settles for the policy limits, I will be in touch." Defendant Exhibit E Plaintiff letter June 23, 1987.

Defendant responded in a letter of August 18, 1987 by stating that "I do not know that [sic] under Pennsylvania Law stacking is allowed for underinsurance. I ask that you please note the Superior Court's reversed [sic] decision in the Sparler vs. Firemen's Insurance Company of New Jersey. The opinion was held on February 4, 1987. If you have any questions, please contact me at [telephone number]." Defendant Exhibit E Defendant letter August 18, 1987.

Finally, in a letter dated December 10, 1987 plaintiff sent defendant a copy of the December 7, 1989 Release and Settlement Agreement between the plaintiff and the tort-feasors and stated: "This letter is a follow-up to my correspondence of May 28, 1987 and June 23, 1987. Please be advised that the tortfeasor action has been settled for the policy limits of $1,000,000.00." Defendant Exhibit B Plaintiff letter of December 10, 1987. Plaintiff then states that "On behalf of the estate and its heirs, demand is made for the policy limits of $300,000.00 under the three policies. In the event that you are not prepared to pay the policy limits, demand is made for arbitration...." Defendant Exhibit B Plaintiff letter of December 10, 1987. I note that plaintiff's post-settlement notice to defendant is consistent with paragraph 25 of his amended complaint, which reads as follows: "After settling the consolidated federal action for the policy limits, plaintiff requested defendant ... to pay plaintiff...." Plaintiff Amended Complaint ¶ 25.

From this series of letters and the pleadings, there is no genuine issue of material fact concerning plaintiff's failure to acquire defendant's consent before settling with the tort-feasors.

Defendant argues that under the terms of the policy issued to Julie Lynn Fisher, the plaintiff must first acquire the consent of the defendant before settling with the tort-feasors. Part C of the Insuring Agreement, entitled "Exclusions," reads in pertinent part as follows: "We do not provide Uninsured/Underinsured Motorist Coverage for bodily injury sustained by any person: 1. If that person or the legal representative settles the bodily injury

claim without our consent." Plaintiff Exhibit C. This consent serves to protect the defendant's subrogation rights. Under Part F of the Insuring Agreement–General Provisions the defendant has subrogation rights. Plaintiff Exhibit C, Our Right to Recover Payment at page 10. Plaintiff does not dispute that the release and settlement agreement executed between the plaintiff and the tort-feasors defeated defendant subrogation rights.

Plaintiff argues that the consent-to-settle provision is invalid and unenforceable. And, if it is enforceable, defendant refused to pay on plaintiff's claim and this waived any requirement to obtain defendant's consent before settling with the tort-feasors.

 First, I consider whether a consent-to-settle clause is invalid and unenforceable under Pennsylvania law. There is no appellate authority directly addressing the issue whether defendant's consent-to-settle provision as applied to an underinsurance claim is unenforceable. However, it is clear that the law of Pennsylvania permits the enforcement of consent-to-settle provisions in claims for uninsured motorist coverage. The Uninsured Motorist Act, 40 Pa.Stat.Ann. § 2000(e)(2) (Purdon 1971) explicitly provides:

> (e) The coverage required by this section does not apply: (2) To bodily injury sustained by the insured with respect to which the insured or his representative shall, without the written consent of the insurer, make any settlement with or prosecute to judgment any action against any person who may be legally liable therefor.

It is equally clear that an Assigned Claims Plan insurer may enforce a consent-to-settle provision against an insured seeking first-party benefits. In *Melendez v. Pennsylvania Assigned Claims Plan*, 384 Pa.Super. 48, 557 A.2d 767 (Pa.Super.1989), the insured had filed an action for damages against the tort-feasor which was eventually prosecuted to judgment in an arbitration proceeding. The insured executed a release in favor of the tort-feasor without first seeking and obtaining the approval of the insurer. The insured then sought first-

party benefits against the insured under the Pennsylvania Motor Vehicle Financial Responsibility Law ("Financial Responsibility Law"), 75 Pa.Cons.Stat.Ann. § 1701 *et seq.* (Purdon Supp.1988).

The trial court granted the insurer's motion for summary judgment against the insured holding that the release executed by the insured extinguished the insurer's subrogation rights against the tort-feasor. *Id.* 557 A.2d at 768.

In affirming the trial court, the Superior Court noted that the insurer is a participant in the Assigned Claim Plan and that subrogation by the Assigned Claims Plan insurer is authorized under section 1756 of the Financial Responsibility Law, which provides:

> the Assigned Claims Plan or its assignee is entitled to recover, in accordance with the tort liability of this Commonwealth, reimbursements for benefits or coverage paid, loss adjustment costs and any other sums paid to an eligible claimant under this chapter. 75 Pa. Cons. Stat. Ann. § 1756.

Next, the court interpreted the breadth of subrogation rights available to an Assigned Claims Plan insurer under section 1756:

> [s]ubrogation rights should be construed in accordance with tort liability law of this Commonwealth. Under the relevant case law of this Commonwealth dealing with both contractual and statutory insurance subrogation issues, it is clear that where an injured party extinguishes an insurer's subrogation rights by settling and releasing an alleged tort-feasor, the injured party loses his right to recover from the insurer. *See Nagle v. Allstate Ins. Co.*, 358 Pa. Super. 82, 516 A.2d 1191 (1986) (plaintiff's settlement with tort-feasor precludes recovery under the Uninsured Motorist Act); *Littlejohn v. Keystone Ins. Co.*, 353 Pa. Super. 63, 509 A.2d 334 (1986) (insured who entered into settlement agreement without written consent of insurer was precluded from recovering uninsured motorist benefits); *Bradford v. American Mut. Liab. Ins. Co.*, 213 Pa. Super. 8, 245 A.2d 478,

479 (1968) (insured who enters into settlement agreement without the written consent of the insurer may not recover from insurer under Uninsured Motorist Act); *Demmery v. Nat'l Union Fire Ins. Co.,* 210 Pa.Super. 193, 232 A.2d 21 (1967) (where insured fails to comply with insurance policy subrogation clause, insurer is not required to make payments under the policy). *Melendez* at 769.

In *Melendez* the court applied general principles of tort liability law of the Commonwealth of Pennsylvania and permitted enforcement of the consent-to-settle provision. The language of *Melendez* clearly supports permitting an underinsurance insurer to enforce a consent-to-settle provision. However, plaintiff seeks to distinguish underinsured motorist claims. First, he argues that because the Financial Responsibility Law explicitly permits uninsured motorist coverage insurers to include a consent-to-settle provision in a policy, the absence of this legislative cachet renders defendant's policy language unenforceable. The *Melendez* court does not agree. There, the court applied the tort liability law of the Commonwealth of Pennsylvania and saw this legislative silence as no barrier. Moreover, in *Melendez* the court explicitly noted that the law of the Commonwealth permits the enforcement of contractual subrogation rights by the insured. *See Popskyj v. Keystone Ins. Co.,* 388 Pa.Super. 429, 565 A.2d 1184 (1989), *en banc* (Court upheld arbitration award denying insured coverage because he failed to obtain consent of underinsurance insurer before settling with tort-feasor); *Prudential Property & Cas. Ins. Co. v. Nayerahamadi,* 593 F.Supp. 216 (E.D.Pa.1984) ("I see no reason to hold that [consent-to-settle] clauses are per se void as contrary to public policy." *Id.* at 218).

▪ Plaintiff presents no proof of requesting defendant's consent before settling with the tort-feasors. In his letter of May 28, 1987 plaintiff informed defendant that his settlement offer to the tort-feasors would expire on June 5, 1987. This announcement did not constitute a request for consent. Regardless, the deadline

passed uneventfully. Plaintiff's other reference to settling appears at the close of his letter of June 11, 1987. As pointed out, it merely state that "[a]s soon as the case settles for the policy limits, I will be in touch." Once again, there is no hint of a request to settle. Instead, this closing implicitly, and opaquely, assumes that the tort-feasor action has not settled and would settle at some time in the future. As mentioned earlier, plaintiff's own complaint alleges he did not inform defendant of the settlement until after it was complete.

▪ Plaintiff also argues that defendant waived its right to enforce the consent-to-settle provision by denying plaintiff's claim. Plaintiff relies on *Kolbe v. Ageis Insurance Company,* 370 Pa.Super. 539, 537 A.2d 7 (1987). In *Kolbe,* the insured requested payment from the insurer under the underinsurance motorist provision of his policy. The insurer responded that it had no liability under the policy and refused coverage. Later, the insured settled with the tort-feasor and executed a general release. The insurer sought to enforce the consent-to-settle provision of the policy, which read as follows: "This coverage does not apply to bodily injury sustained by a person: ... If that person makes any settlement without our written consent."

In forbidding recourse to the consent-to-settle provision, the court noted that the insurer had been advised of the accident and the insured's claim for underinsurance coverage. In response, the insurer "disclaimed liability, and thus took the legal position that its policy coverage was not applicable to the plaintiff's claim." *Id.* 537 A.2d at 8. Underscoring its position, the insurer refused "to enter into the arbitration procedure made mandatory by its own policy." *Id.*

The material facts present in *Kolbe* simply are not present in the action before me. Defendant neither disclaimed liability nor refused to arbitrate. Defendant's position as reflected in this correspondence can hardly be construed as a denial of liability. Nowhere does defendant disclaim liability. Defendant did not disclaim liability in its correspondence with plaintiff but stated

the effect that a settlement with the tort-feasors may have on its liability, depending on the amount of the settlement. Defendant took no position on plaintiff's request to stack the liability limits of the two policies. Moreover, plaintiff's letter of December 10, 1987 states the first clear demand for an amount of the underinsurance coverage sought by plaintiff ($300,000.00) and, in the same letter, announces that plaintiff has settled with the tort-feasors.

The defendant in *Kolbe* refused to arbitrate. In contrast, the defendant in the action before me cooperated fully with plaintiff's request to arbitrate and now seeks an order of the court compelling plaintiff to arbitrate.

I find plaintiff's reliance on *Kolbe* to be misplaced. However, it is noteworthy that *Kolbe* implicitly holds that had the insurer not disclaimed liability and been willing to participate in arbitration, the consent-to-settle provision would have been enforced.

Finally, plaintiff argues that the Superior Court's decision in *Daley–Sand v. West American Ins. Co.,* 387 Pa.Super. 630, 564 A.2d 965 (1989) supports preventing the insurer from asserting the consent-to-settle provision. In *Daley–Sand,* an insured brought an action against his underinsured motorist carrier challenging its refusal to consent to a settlement with the tort-feasor and to pay underinsured motorist benefits. The court went on to hold that the insurer's refusal to consent violated the underlying public policy behind requiring all motorist to carry underinsured coverage. However, in the action between plaintiff and defendant, no request for consent was ever proffered by plaintiff. Hence, the holding in *Daley–Sand* is not applicable.

## VI.

I find that no genuine issue of material fact exist as to plaintiff's failure to attempt to obtain the defendant's consent before settling with the tort-feasors. The settlement was complete in that it denied defendant any rights under its subrogation clause. The settlement was in violation of the consent-to-settle provision of the policy between defendant and the deceased. As a matter of law, defendant is entitled to enforce the consent-to-settle provision. Hence, defendant's motion for summary judgment is GRANTED to the extent that plaintiff's amended complaint is DISMISSED.