Ardrey v. Keystone Insurance Company

*Pamela G. Shuman,* for plaintiffs.
*Richard B. Druby,* for defendant.

KLEINFELTER, *J.,* August 31, 1995—The present matter before the court is a motion for summary judgment by defendant Keystone Insurance Company. On February 18, 1989 plaintiff Joanna Ardrey, while driving her automobile, was involved in a collision with two other vehicles. She and plaintiff Aylea Richardson, a passenger in her car, were both injured. The other two vehicles were operated by Jesus Morales and Dean Borger. According to the police report, Ardrey's vehicle was stopped, facing west, at a stop sign when the Morales and Borger vehicles, travelling north, approached the intersection. The report states that as Morales began moving into the inside lane where Borger was located, Borger braked his vehicle to avoid a collision with Morales, and, as a result, Borger's brakes locked, causing him to slide into the Ardrey car. The police issued Morales a citation under the Pennsylvania Motor Vehicle Code for failure to observe the required position and method of making a righthand turn. See 75 Pa.C.S. §3331(a). Neither Ardrey nor Borger were charged.

At the time of the accident Keystone was Ardrey's insurance carrier. It received a report of the collision several days after it occurred. Fourteen months later, as evidenced by a "report to file form" in Keystone's files, plaintiffs' attorney phoned the Keystone adjuster assigned to the case and advised her that Ardrey would be claiming underinsured motorists coverage. A month later, on June 12, 1990, plaintiffs' attorney forwarded to Keystone copies of letters demanding settlement from Allstate Insurance Company, Morales' insurer, and Erie Insurance Company, Borger's insurer. In an accompanying letter the attorney again informed Keystone that Allstate and Erie had indicated that their insureds would probably not have sufficient coverage to compensate the plaintiffs' claims and that, consequently, plaintiffs

would look to Ardrey's underinsured motorist coverage for compensation.

Fifteen days later, on June 27, without any further contact with Keystone, Ardrey and Richardson settled with Allstate. In the settlement plaintiffs and a third person, a passenger in Ardrey's car who is not a part of this action, each received $10,000, which constituted the limits of Morales' coverage. Moreover, Ardrey and Richardson signed an agreement which effectively released Morales and his insurer from any further liability arising from the accident. By letter dated July 2, plaintiffs' attorney informed Keystone of this transaction. He also advised Keystone that Erie had refused to make settlement. According to the attorney, Erie insisted that Borger was "not legally liable for the accident and the resulting injuries." Thus, the attorney stated, "Ms. Ardrey now looks to Keystone, her underinsured motorist carrier, for the balance of her settlement demand, which is $115,000."

On December 18, 1990 the Keystone adjuster forwarded a letter to plaintiffs' attorney to tell him that "before we can honor the underinsured motorist claims, you must exhaust the limits of all tortfeasors involved in this loss. We feel there is a negligence on the Erie Insurance driver, no matter what Erie says or what you accept." Noting her awareness of the attorney's disagreement with Keystone's position, the adjuster suggested that the attorney formally request Keystone to meet with an arbitrator to resolve the matter. The attorney was apparently uninterested in arbitration because on February 15, 1991 plaintiffs filed suit against Borger. The action was subsequently dismissed, however.[1] On May 17, 1994 plaintiffs initiated this action seeking

---

1. Plaintiffs failed to comply with a court order directing them to respond to discovery requests. Upon a motion for sanctions by

declaratory judgment against Keystone. Plaintiffs claim that they are entitled to underinsured motorists benefits pursuant to the coverage in Ardrey's policy. Keystone filed an answer and new matter July 12, 1994, and plaintiffs responded to new matter on July 27. Discovery was subsequently conducted. Keystone filed a motion for summary judgment on March 10, 1995. The motion was argued before an en banc court the following May.

Summary judgment will only be granted when a review of all "the pleadings, depositions, answers to interrogatories, and admissions of fact together with affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." 42 Pa.R.C.P. 1035. The moving party has the burden of proving that summary judgment is warranted. Any doubt in this regard will be resolved in favor of the nonmoving party. *Baesel v. New Boulevard Baking Co. Inc.,* 410 Pa. Super. 591, 600 A.2d 610 (1991).

Keystone supports its motion on two grounds, both relating to the charge that plaintiffs violated the terms of the contract by not taking the appropriate steps in their claims against Morales and Borger. First, defendant avers, by signing the agreement to release Morales and Allstate from future liability without defendant's consent, plaintiffs violated certain directives in the contract that were intended to protect Keystone's rights of subrogration.[2] According to Keystone, it was never even

---

the defendant, this court issued an order precluding plaintiffs' use at trial of any matters related to Borger's discovery requests, including evidence of plaintiffs' physical and mental condition. Borger then filed a motion for summary judgment, which was granted on March 8, 1993.

2. The policy states in pertinent part:
"EXCLUSIONS

"(A) We do not provide uninsured/underinsured motorists coverage for 'bodily injury' sustained by any person:

notified of a settlement offer until the letter of July 2, 1990 wherein plaintiffs' attorney advised the defendant that plaintiffs had executed the settlement and release agreement with Allstate. Consequently, Keystone argues, when plaintiffs signed the release agreement, they breached the insurance contract and are not entitled to underinsured motorists benefits. In the second contention Keystone claims that plaintiffs breached the term requiring them to exhaust the "limits of liability" against Borger when they allowed the suit against him to be dismissed[3] and that under the circumstances Keystone would not have the option of pursuing an action against Borger as a subrogee. Because we grant summary judgment on the first argument we need not address the second.

Plaintiffs oppose the motion by charging Keystone with engaging in "bad faith" conduct in its handling of their claims. In particular, plaintiffs contend that Keystone violated its usual practice and procedures in such matters by not conducting a timely investigation of Morales and Borger's insurance coverage. Plaintiffs

"(2) If that person or the legal representative settles the bodily injury claim without our consent. (p.6.) . . .

"OUR RIGHT TO RECOVER PAYMENT

"(A) If we make payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

"(1) Whatever is necessary to enable us to exercise our rights; and

"(2) Nothing after loss to prejudice them." (p.10.)

3. The term, contained in the UNINSURED/UNDERINSURED MOTORISTS COVERAGE states in pertinent part:

"We will pay damages under this coverage arising out of an accident with an 'underinsured motor vehicle' only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgment or settlements."

point out that the claims supervisor at Keystone testified in his deposition that such information is usually obtained by Keystone within 20 days of receiving the accident report and claim. Moreover, plaintiffs aver, Keystone received adequate notice of the pending settlement "at least by" June 12, 1990 through the correspondence of that date sent by plaintiffs' attorney.

As further evidence of this notice, plaintiffs cite a "report to file form," written by the Keystone adjuster on September 25, 1990, which states in pertinent part:

"We were notified of Allstate's offer on—June 12, 1990—And we should have requested a copy of the dec sheet as well as the tender letter. We should have been requested to send a letter advising that we would not pursue subrogation rights against Allstate's insured. Under *Daley-Sand* we would have had 30 days to give permission to settle or pay out what the tortfeasor was obligated to pay."

Plaintiffs argue that this report not only proves that Keystone knew of the upcoming settlement with Allstate by June 12, 1990, it also shows that defendant was aware of its obligation to either consent to the agreement, or to pay the plaintiffs the amount demanded so that Keystone could assume subrogation rights against the tortfeasor. Consequently, plaintiffs maintain, they complied with the terms of the policy while Keystone violated its duty to act with "good faith and fair dealing" towards the plaintiffs.

We find that plaintiffs' argument is not persuasive. Initially, we question plaintiffs' claim that their attorney's correspondence with Keystone on June 12, 1990 provided ample notice of a pending settlement.[4] In

4. We do not concur, however, with the suggestion made in plaintiffs' argument that the telephone call, dated May 7, 1990, can be

*Fisher v. USAA Casualty Insurance Company,* 973 F.2d 1103, 1107 (3d Cir. 1992), the court indicated that adequate notice includes "either a demand for consent or a claim and sufficient information regarding the proposed settlement." Here, plaintiffs' attorney submitted to Keystone copies of the plaintiffs' demands for settlement from Allstate and Erie. The demands contained extensive details regarding the injuries and losses claimed as well as a request to settle within 15 days. Counsel also stated in his letter to Keystone that the plaintiffs would be claiming underinsured motorists benefits. On the other hand, the letter of June 12, 1990 to Keystone does not request Keystone's consent to the settlement proposed in the letters to Allstate and Erie. Moreover, the June 12 letter does not indicate that either Allstate or Erie had agreed to the settlement proposed in the demand letters submitted to them.[5] We have reservations, therefore, that the June 12 letter constitutes a "demand for consent or a claim and sufficient information regarding the proposed settlement" as required by *Fisher, supra.*

Regardless of such reservations, we are satisfied that summary judgment is appropriate since plaintiffs did not give Keystone sufficient time to respond before they signed the settlement agreement. While the courts have not set a specific time period in which an insurer, upon receiving adequate notice, must respond to a request for a consent to settle, the decision in *Daley-Sand v. West American Insurance Company,* 387 Pa. Super.

---

considered proper notice. According to the "report to file form," plaintiffs' attorney merely informed the Keystone adjuster that the plaintiffs would be claiming underinsured motorists benefits. No mention is made of a pending settlement offer or agreement.

5. This is not surprising since the letters to Allstate and Erie are dated June 11 and June 8, respectively.

630, 564 A.2d 965 (1989), which is mentioned in the "report to file form" quoted above, offers guidance. In *Daley-Sand* the defendant insurer withheld giving any response to the plaintiff insured upon her request for the insurer's consent to settle. After six months plaintiff filed a "petition to resolve subrogation" with the trial court. Six months later the court granted her petition by issuing an order which permitted plaintiff to accept the settlement agreement and still preserve her rights to claim underinsured motorists benefits. The trial court "then stayed this relief for a period of 30 days to allow [defendant] to tender its own draft for $50,000 to [plaintiff]" to "perfect[ing] its subrogation rights." *Id.* at 635, 564 A.2d at 968.

In affirming the trial court's "remedy" on appeal, the Superior Court indicated that it would be a violation of public policy to permit an insurer to delay indefinitely its response to an insurer's request for a consent to settle. The Superior Court emphasized the importance of balancing the insured's "right to paid-for and legislatively mandated UIM coverage . . . against the insurer's *future* subrogation opportunities." *Id.* at 642, 564 A.2d at 971. (emphasis in original) The court then concluded that "[t]he 30 days given West American by the court is an eminently reasonable amount of time, considering that" defendant had already had a year to investigate "its possible subrogation opportunities." *Id.* at 642-43, 564 A.2d at 972. *Daley-Sand* thus indicates that an insurer should be allowed a minimum of 30 days to respond upon receiving sufficient notice of the insured's intent to settle with the tortfeasor.

In this case it would surely be against public policy to deny plaintiffs' rights to underinsured motorists benefits *if Keystone had "unduly delay[ed] its decision regarding coverage." Fisher, supra* at 1107. (emphasis

added) Ardrey had paid for such benefits. In addition, the facts suggest that plaintiffs were not responsible for the accident and that the losses incurred from the resulting injuries were not covered under Morales' policy. Unfortunately, however, plaintiffs failed to ensure that Keystone had sufficient time to exercise its options regarding subrogation. Upon giving Keystone notice of the pending settlement on June 12, 1990, plaintiffs gave Keystone 15 days at most to investigate which course of action would be appropriate and advise plaintiffs. This time period falls far short of that which is suggested by *Daley-Sand*. Consequently, plaintiffs have no basis to claim that Keystone withheld its consent in "bad faith." By nullifying Keystone's opportunity to become a subrogee in relation to Morales, plaintiffs breached the terms of the insurance policy. *Archer v. State Farm Insurance Co.,* 419 Pa. Super. 558, 615 A.2d 779 (1992), *alloc. denied,* 535 Pa. 612, 629 A.2d 1375 (1993). Thus, they are not entitled to underinsured motorists benefits.

For the foregoing reasons, we enter the following

## ORDER

And now August 31, 1995 defendant's motion for summary judgment is granted and this case is dismissed.