Nationwide Mutual Insurance Co. v. Lehman

C.P. of Dauphin County, no. 5224 S 1994.

*Jered L. Hock,* for plaintiff.
*Robert F. Claraval,* for defendant.

HOOVER, *J.,* December 8, 1998—This matter is presently before the court on the parties' cross-motions for summary judgment. The relevant facts and procedural history are summarized as follows:

On December 24, 1990, Daniel Lehman was injured in a motorcycle accident. He was stopped for a red light on Route 22 at Devonshire Road when he was struck by a car driven by Kenneth Myers. Mr. Myers had cut in front of a car driven by Martha Warner, and the Warner vehicle pushed the Myers vehicle into Mr. Lehman. Initially, Mr. Lehman did not think that his back injuries were severe, but over the years, he has had to undergo three back surgeries. He retired from his position at the Central Dauphin School District because of his injuries. Suit was filed against Mr. Myers and Ms. Warner an April 7, 1992. Mr. Lehman's attorney had contact with an adjuster with his insurance company, Nationwide. At that time, the adjuster was told that it appeared to Mr. Lehman's doctors that his injuries would heal. The adjuster was also told that based on Mr. Lehman's injuries, the medical opinions and the policy limits of coverage available to the two defendants, it appeared that the limits of the tort-feasors' policies would be sufficient and that the case had a settlement value of $80,000. This was the only time that Mr. Lehman's attorney had contact with an adjuster from Nationwide. Mr. Lehman and his attorney kept in regular contact with Mr. Lehman's insurance agent from Nationwide, Joyce Potteiger. This agent was periodically informed about Mr. Lehman's progress and prognosis. She was informed that the case against Mr. Myers and

Ms. Warner was listed for trial. The case was initially listed for trial in January 1994. The case was then continued because Mr. Lehman had to undergo additional surgery. On July 26, 1994, Mr. Lehman's attorney requested the policy limits from both tort-feasors which was $100,000 from each. On August 12, 1994, Ms. Warner's attorney offered $80,000 to settle her case. The case attached on Friday, August 19, 1994 to begin on Monday, August 22, 1994. On August 18, 1994, the attorney for Ms. Warner offered the policy limits for $100,000. On August 19, 1994, Mr. Lehman's attorney faxed a letter addressed to Nationwide's adjuster and to Ms. Potteiger, advising them of the proposed settlement and requesting Nationwide's consent to settle. On August 22, 1994, Nationwide notified Mr. Lehman's attorney that it could not consent to a settlement until its file and other information regarding the potential assets of Ms. Warner was reviewed. Since Ms. Warner was a college student at the time of the accident, Mr. Lehman was secure in his belief that she had no assets of her own. Mr. Lehman consented to the settlement for a number of reasons: the uncertainty of a verdict was eliminated; Mr. Lehman had already paid a retainer to Mr. Sleber, a vocational psychologist; a postponement of trial would result in his medical testimony becoming stale; and there was no guarantee that the case would have been tried during the next term of court. Mr. Lehman accepted the settlement with Prudential, Ms. Warner's insurer, signed the release and tried the case against Mr. Myers. The jury returned a verdict on August 26, 1994, finding Ms. Warner 85 percent responsible and Mr. Myers 15 percent responsible. The amount of the verdict was $265,500, which included $165,500 for loss of income. Mr. Myers' portion of the verdict was paid by State Farm. After the trial, Mr. Lehman

requested underinsured coverage from Nationwide. Nationwide did not respond but instead filed the instant action for declaratory judgment.

The issue before the court is whether an insured may recover underinsured benefits from his carrier where the carrier never consented to the settlement between the insured and the tort-feasor, and where the carrier has suffered no prejudice as a result of the settlement. We are guided by the United States District Court opinion in *Prudential Property & Casualty Insurance Company v. Nayerahamadi*, 593 F. Supp. 216 (E.D. Pa. 1984). This was also a declaratory judgment action. Prudential sought to prevent the defendant from claiming supplemental underinsured motorist benefits under a Prudential auto insurance policy. *Id.* at 217. The defendant was in an automobile accident while driving a friend's car that was insured by Prudential. *Id.* The defendant lodged a claim against the other driver who was insured by Allstate and settled the claim against that driver for the limits of his policy ($15,000). *Id.* As a condition of the settlement, the defendant executed a release discharging the other driver from all claims arising out of the accident. *Id.* The defendant filed a claim with Prudential, the carrier covering the car he was driving at the time of the accident, for underinsured motorist benefits. *Id.* Prudential responded to the request by stating that it was not required to pay any benefits because the defendant settled his case against the other driver without first obtaining Prudential's consent pursuant to the Prudential policy. *Id.* The defendant urged the court to invalidate the consent-to-settle clause because it would allow the insurance company to block settlements and evade liability for underinsured motorist benefits. *Id.* Prudential argued that the consent-to-settle clause was necessary to protect its subrogation rights

which were extinguished by the settlement with the tort-feasor. *Id.* at 218. The court determined that such clauses were not per se void as against public policy but the court did state that Prudential was not able to escape liability by invoking this clause unless it could demonstrate some prejudice to it resulting from the defendant's failure to obtain Prudential's consent to the settlement. *Id.* The court determined that if the settlement was reasonable, Prudential could not have withheld consent to the settlement and would not have been prejudiced by the defendant's failure to obtain prior approval of the settlement. *Id.* The court ordered that the matter be set for a hearing before an arbitration panel to determine if the settlement was reasonable. *Id.*

Therefore, in accordance with this decision, the first inquiry should be whether the settlement was reasonable, and whether Nationwide was prejudiced in any way by the settlement. The plaintiff was directed by the court to conduct an investigation of the assets of Martha Warner to determine whether the plaintiff was prejudiced by the loss of its subrogation rights. Robert F. Claraval, Esquire, submitted a sworn affidavit regarding the assets of Martha Warner. At the time of the accident, Martha Warner was driving a car which was titled in her parents' names. She was a full-time college student at Elizabethtown College and she resided with her parents at the time of the accident. Her only assets were a checking account with an account balance of $200 and a savings account which was in her name and her mother's name with an account balance of $500. She is currently employed as a staff occupational therapist in Pomona, New Jersey, and is in the process of paying student loans in the amount of $10,000. We find that Nationwide has suffered no prejudice by the defendants' settlement with the tort-feasor. We are aware

that the Third Circuit has failed to follow the district court's decision, in *Prudential Property & Casualty Insurance Company v. Nayerahamadi, supra,* because it has determined that if presented with this issue, the Pennsylvania Supreme Court would fail to follow the prejudice rule adopted in the *Prudential* case cited above. See *Fisher v. USAA Casualty Insurance Company,* 973 F.2d 1103 (3d Cir. 1992). We can certainly not predict how the appellate courts will come to judge our reasoning in this case. However, under the circumstances of this given case, when it is clear that the tort-feasor had no significant assets at the time of the accident and the settlement was for the policy limits of the applicable insurance policy, it is clear that Nationwide would have had no basis to refuse to provide their consent to the settlement. It is clear that Nationwide mistakenly put their file in storage and did not have ready access to the file. It is also clear that they were provided with sufficient notice that the circumstances of Mr. Lehman had changed and that his condition was more serious than they had originally thought. Mr. Lehman should not have to suffer the consequences of Nationwide's inability to provide the consent to settle before the commencement of trial. Mr. Lehman paid for the coverage that he is now seeking and the insurance company should not be permitted to deny coverage based on a technicality, especially when they have suffered no prejudice and there would have been no reason for the insurance company to have denied the Lehmans' request for a consent to settle.

We have reviewed the cases cited by the plaintiff and find that they can be distinguished or are not applicable given the *specific* fact situation of the case that is presently before the court. In *Boyle v. Erie Insurance Company,* 441 Pa. Super. 103, 656 A.2d 941

(1995), the court was asked, among other things, to determine if the consent-to-settle clause contained in the subject insurance policy could be invoked to support the insurance company's contention that its policyholder was not entitled to underinsured benefits. The court determined that the insurance company could not invoke the consent to settle clause because the insurer was requested to give consent to the settlement for 10 months and failed to either grant or deny consent. *Id.* at 110, 656 A.2d at 944. The plaintiff suggests that the instant case is different from *Boyle* since the insurance company in *Boyle* failed to give an answer to the consent-to-settle request after 10 months. In our case, although 10 months had not elapsed after the request was made, the insurance company was well informed about the progress of the proceedings and Mr. Lehman's declining health, and it should have been no shock that underinsurance was an issue in this case. Furthermore, in this case, Mr. Lehman had settled with the tort-feasor's insurance company for the policy limits, it is clear that the tort-feasor had no assets, therefore, there would have been no reason for the insurance company to have withheld their consent to the settlement.

We are mindful of this court's decision in *Ardrey v. Keystone Insurance Company,* 115 Dauphin Rep. 301 (1995) in which the court held that 30 days from the date that an insured makes a request for consent to settle from its underinsurance carrier was a reasonable period of time for an underinsured carrier to investigate any possible subrogation rights. This "30-day rule" was developed in the case of *Daley-Sand v. West American Insurance Company,* 387 Pa. Super. 630, 564 A.2d 965 (1989). However, we conclude that in our fact situation, an arbitrary 30-day rule would be oppressive to the insured when no actual prejudice was suffered by the insurance company.

In fact, we analogize this situation to the arbitrary "two-year" *Penn Piping*[1] presumption that was recently disavowed by the Supreme Court in *Jacobs v. Halloran,* 551 Pa. 350, 710 A.2d 1098 (1998). In *Penn Piping,* the court held that in cases involving a delay of two years or more, the delay will be presumed prejudicial for purposes of any proceeding to dismiss for lack of activity on the docket. In *Jacobs v. Halloran,* the court abandoned the two-year presumption of prejudice. The court stated that to dismiss a case for inactivity pursuant to the defendant's motion for non pros, there must first be a lack of due diligence on the part of the plaintiff in failing to proceed with reasonable promptitude, the plaintiff must have no compelling reason for the delay and the delay must cause actual prejudice. We are not persuaded that the court in *Daley-Sand* determined that an underinsurance carrier in all situations should be given 30 days to react to a consent to settle request. However, assuming that the appellate courts have adopted such a 30-day requirement, in light of the facts in this case, we find that notice to Nationwide of the potential for an underinsurance claim existed, and we find that no *actual* prejudice to Nationwide occurred by the failure to obtain their consent to settle with the tort-feasor.

Accordingly, we enter the following:

## ORDER

And now December 8, 1998, the motion for summary judgment filed on behalf of Daniel W. Lehman and Dolores Lehman is hereby granted and the motion for summary judgment filed on behalf of Nationwide Mutual Insurance Company is hereby denied.

---

1. *Penn Piping Inc. v. Insurance Company of North America,* 529 Pa. 350, 603 A.2d 1006 (1992).